121 So.2d 769 (1960)
SOUTHWESTERN ELECTRIC POWER COMPANY, Inc., Plaintiff-Appellee,
v.
CANAL INSURANCE COMPANY et al., Defendants-Appellants.
No. 9258.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1960.
*770 Bodenheimer, Looney & Richie, Shreveport, for appellants.
Wilkinson, Lewis, Madison & Woods, Shreveport, for appellee.
GLADNEY, Judge.
Southwestern Electric Power Company, Inc. brought this suit to recover damages to an electric light pole and the resulting cost of services occasioned by the breaking of the pole. Made defendants are James Bonnie Moore, the owner and operator of a business known as the J. B. "Bonnie" Moore Trucking Company, and the Canal Insurance Company, the liability insurer of a truck owned by the trucking company and driven by its employee, R. L. Fields, which truck on June 12, 1958, damaged one of plaintiff's electric light poles located at the southwest corner of the intersection of Claiborne Avenue and the Mansfield Road in the City of Shreveport. After a trial of the case, judgment was rendered in favor of plaintiff in the amount of $728.08. Defendants have appealed from this decree.
The uncontradicted evidence shows Fields was driving the truck and hauling a waterwell drilling rig with a long, overhanging boom mounted on the trailer. While attempting a turn at Claiborne Avenue and Mansfield Road, the overhanging boom attached to the drilling rig hit the pole and broke it. The negligence of the truck driver is not seriously questioned.
Plaintiff produced witnesses who testified as to the expense incurred: for replacing and setting the new pole, $258.12; in removing the damaged pole, $103.15; in bypassing lines around the damaged pole, $424.82; making a total of $786.09. With reference to the damages sustained, the district judge resolved:
"A good deal of testimony was taken with respect to the cost of installing this pole, and we think the plaintiff established the amount of its loss. One electric light pole is an integral part of a system which, when destroyed, interrupts electric service to customers; and, in the nature of things, temporary service is provided for such customers, and we think it is proper to allow this expense. In fact, if service is interrupted to customers and a plaintiff could prove the amount of loss of revenue resulting from a tort, we think it would be entitled to that item, also. Plaintiff does not sue for a loss of revenue, but sues for the cost of installing bypass wires."
The evidence disclosed the broken pole carried 2-12000 KV electric lines, one of which ran north and south along the Mansfield Road, and the other east and west on Claiborne Avenue. In addition to supporting distributing lines guy wires were attached to the pole for a traffic light in the *771 center of the intersection. In making the repairs it was necessary to shore the pole temporarily and later replace it. The expense involved in the repair work was itemized and properly accounted for.
Counsel of appellants do seriously question plaintiff's right of full cost recovery for the new investment, retirement expense and maintenance expenses which, it is argued, in no event should exceed the percentage of life remaining in the pole at the time it was damaged, calculated to be 6.66 per cent. The judge a quo acceded to the plea of defendants in this respect, but only as to the cost of the pole, and reduced plaintiff's demands by the sum of $78.64. In arriving at this deduction the court depreciated (using a period of thirty years as 100 per cent) the cost of the original pole, $71.20, over a period of twenty-eight years and fixed its value at the time of the accident at $4.84.
An accountant for plaintiff testified that for plaintiff's accounting purposes its records on a job such as involved in this case, are divided into three categoriesinvestment, retirement and maintenance, which as above set forth, constitute items which may be described as replacing and setting the new pole, removing the damaged pole, and bypassing lines around the damaged pole, respectively. The contention of counsel for appellant is that forasmuch as the pole is depreciated over a period of thirty years upon the books of the company that all items of expenses incurred by plaintiff should be depreciated over the same period of time and plaintiff, in fact, should be permitted on account of these other items the sum of $52.40 and no more. The total expenses incurred by plaintiff were actual, direct out-of-pocket expenses incurred by reason of the tortious act. Plaintiff is, in our opinion, entitled to recover its actual loss in wages and material and is entitled to be restored in the same position it was in prior to the accident. This has been so held by our Supreme Court in Sugar Bros. Co., Ltd. v. City of Monroe, 1931, 173 La. 760, 138 So. 658, and Lambert v. American Box Co., 1919, 144 La. 604, 81 So. 95, 98 3 A.L.R. 612, in the latter case, the Supreme Court saying:
"Counsel further argue that the lower court erred in allowing recovery for a new gallery, when only an old one was destroyed. The obligation of defendant, however, is to indemify plaintiffto put him in the position that he would have occupied if the injury complained of had not been inflicted on him. It goes further than that of an insurer against loss by fire, who takes no risk against personal effort and inconvenience. And yet, so far as we know, those who are engaged in the insurance business do not undertake to build an old house, by way of indemnifying the assured for the loss of an old house, and no suggestion is here made as to the manner in which that can be done. According to the evidence of plaintiff's contractor, the broken material of which the gallery in question was constructed, and which, at the time of the trial, was lying in a confused heap on plaintiff's premises, could not again be utilized in the construction of a gallery and it is not pretended that it could be so utilized, save by matching and welding the broken bits of iron, patching the flooring, and supplying missing parts of both with new material, all of which, when done, at an expense not estimated would result in the production of a gallery composed of matched, patched, and welded material, which would not be the gallery that was destroyed, or which plaintiff is bound to accept by way of indemnity for that which was destroyed."
Appellee has neither appealed nor answered the appeal and accordingly, the value of the pole as fixed by the trial court may not be altered in its favor.
For the foregoing reasons the judgment from which appealed is affirmed at appellants' cost.