OHIO POWER CO., APPELLANT, v. ZEMELKA, APPELLEE.
OHIO POWER CO., APPELLANT, v. WARREN, APPELLEE.

(Nos. 1065 and 1066—Decided September 16, 1969.)

*Mr. Thomas J. Jones,* for appellant.
*Messrs. Thornburg & Furbee,* for appellees.

LYNCH, P. J. The only question in this case is whether a person liable for the destruction of an electric utility pole is entitled to a credit for accrued depreciation in computing damages due the public utility.

Defendants, appellees herein, admitted liability. The following cost to make the necessary repairs to replace the damaged utility pole is not in dispute:

| | |
|---|---|
| Cost of pole | $ 24.71 |
| Cost of pole storage | 3.21 |
| Bill for labor, including fringe benefits and employee's expenses | 226.36 |
| Transportation expenses | 45.48 |
| Administration and engineering expenses | 44.96 |
| Total bill | $344.72 |

The trial court held that the proper measure of damages is the total cost of the pole and the facilities attach-

ed thereto less accrued depreciation of the damaged or destroyed pole.

The trial court found that the pole was installed in 1947; that, for accounting purposes, plaintiff, appellant herein, depreciates the physical assets of the company at the annual rate of 3.3 per cent; that this pole has been depreciated by plaintiff at the rate of 3.3 per cent per year over a period of twenty years; that 3.3 per cent of $24.71, the cost of the pole, is 82c per year; and that in twenty years the pole has been depreciated to the extent of $16.-40, leaving a value of the pole as of the date of destruction of $8.31.

The trial court reduced plaintiff's claimed damages for the destruction of this utility pole of $344.72 by $16.40 and rendered judgment for plaintiff for $328.32 against defendants. Plaintiff appealed this judgment, and the only issue is the $16.40 credit which the trial court gave defendants for the accrued depreciation of the utility pole.

Plaintiff's testimony was that the life expectancy of a utility pole is indefinite. Defendants' witness, who is manager of the Belmont Electric Co-Operative, testified that his company depreciates thirty-five- to forty-foot pine poles similar to the one at issue in this case on the basis of a life expectancy of thirty-two to thirty-three years.

In Ohio, no Court of Appeals or Supreme Court decision on this issue has been called to our attention; however, this question has been decided by some lower courts in Ohio, and by some appellate courts in other states, and there is a division of authority on this question.

Some cases hold that the measure of damages for negligent destruction of a utility pole is the cost of the pole and the facilities attached thereto based on reproduction cost less accrued depreciation of the damaged pole and facilities attached thereto, despite the utility's contention that as a matter of bookkeeping its position would not be improved by replacement with a new pole, since allowing cost without depreciation would unjustly enrich the utility's customers. *Ohio Power Co.* v. *Huff*, 12 Ohio Misc. 214; *New York State Electric & Gas Corp.* v. *Fischer,* 43 Misc.

2d 178, 250 N. Y. Supp. 2d 567, affirmed in 24 App. Div. 2d 683, 261 N. Y. Supp. 2d 310; *Central Illinois Light Co.* v. *Stenzel*, 44 Ill. App. 2d 388, 195 N. E. 2d 207.

Other courts hold that there is not a discernible life expectancy of an individual pole; that a court can not say with reasonable assurance that the installation of a new pole did more than remedy the wrong done, and, therefore, that it is impractical to attempt to apply a measure of damages based on the difference in value before and after the accident. *Ohio Power Co.* v. *Johnston*, 18 Ohio Misc. 55; *New Jersey Power & Light Co.* v. *Mabee*, 41 N. J. 439, 197 A. 2d 194; *Carolina Power & Light Co.* v. *Paul*, 261 N. C. 710, 136 S. E. 2d 103; *Southwestern Electric Power Co.* v. *Canal Ins. Co.* (La. App.), 121 So. 2d 769.

A careful reading of the cases indicates that the differences between the various cases are of fact rather than principle in many instances. One of the problems that concerns courts in deciding this issue is whether the life expectancy of an individual pole can be ascertained with reasonable certainty; and the facts in the various cases vary in establishing the life expectancy of the utility pole. However, there is also a clear conflict of legal principle in the decision of some of these cases.

There is no disagreement that the injured party is entitled to be compensated for the injury sustained, and that compensatory damages are intended to make whole the plaintiff for the wrong done to him by the defendant. The issue is whether the allowance of accrued depreciation as a credit on the reproduction cost of the utility pole is proper so that the utility company is not unjustly enriched because of the accident.

In the instant case, the evidence established that a similar utility company to plaintiff depreciated its utility poles on the basis of a life expectancy of thirty-two to thirty-three years, and that plaintiff depreciated the physical assets of the company, for accounting purposes, at the annual rate of 3.3 per cent per year. Therefore, we agree with the trial court that the life expectancy of the utility pole had been established with reasonable certainty, and

that the annual depreciation rate of 3.3 per cent per year for a utility pole is based on sound accounting principles.

We further agree with the trial judge that the measure of damages for negligent destruction of a utility pole is the cost of the pole and the facilities attached thereto based on reproduction cost less accrued depreciation of the damaged pole and the facilities attached thereto.

We feel that justice is a two-way street. Just as plaintiff is entitled to be compensated for such items as cost of pole storage and administration and engineering expenses, because the application of sound accounting principles establishes that these indirect expenses are properly part of the damages suffered by a utility company when one of its utility poles is damaged, so defendants are entitled to use sound accounting principles to establish the life expectancy of a utility pole so that the depreciation of such a utility pole can be readily determined by the application of sound accounting principles.

It is true that a utility pole has a variable life expectancy, just as any other item of personal property, such as an automobile, furniture, etc., but sound accounting principles can establish a life expectancy of such items. Similarly, variable expenses such as cost of pole storage and administration and engineering expenses can be established by sound accounting principles. All variables can be attacked on the basis of uncertainty; however, for business and legal reasons, we need to establish uniform definite standards for variable expenses on the basis of sound accounting principles. We feel that there is no difference in the application of sound accounting principles to determine the accrued depreciation of a damaged utility pole with a variable life expectancy than to determine the indirect costs of repairing the damaged pole by the application of sound accounting principles to the variable costs of such expenses.

*Judgment affirmed.*

O'NEILL and JOHNSON, JJ., concur.