Costs on the Commonwealth of Pennsylvania.

## Pennsylvania Electric Company v. Taube

*Ervin S. Fennell*, for plaintiff.
*Robert M. Hanak*, for defendants.

SNYDER, *P.J.*, December 26, 1978—

## SUMMARY HISTORY OF CASE

In each of the five separate tort claims which have been consolidated in this proceeding plaintiff seeks to recover for damages done to plaintiff's electric poles and power lines by defendants in the course of motor vehicle accidents. Liability is admitted by each of the respective defendants for the incident in which that particular defendant was involved. However, each defendant disputes the amount of the damage which plaintiff seeks to recover and in each instance the dispute raises the same issue, viz.: When an electric utility company uses its own labor force and its own materials to repair damage done to its poles and power lines, are the company's labor overhead costs and stores overhead costs items of cost which should be included as part of the reasonable cost of repair for which the tortfeasor is liable?

In each case plaintiff contends that "reasonable cost of repair" includes the following items:

1. The amount of *actual wages* paid the men on the repair crew for the time required to repair the damage.

2. A *"labor overhead cost"* amount calculated at the rate of 37 percent of the actual wages paid the repair crew.

3. *Cost* of the pole and other required materials at the prices carried on plaintiff's *inventory cost list.*

4. A *"stores overhead cost"* amount of ten percent of the inventory cost of the poles and other required materials.

5. The *cost of transporting* the pole and materials to the site of the damage.

Defendants contend that only items 1, 3 and 5 are recoverable. They assert that the labor overhead cost and the stores overhead cost are not costs which were the direct and proximate result of any negligence on their part and, therefore, such costs are not damages that may be recovered against them.

Evidence was received by the court in a non-jury trial as to how plaintiff determined that its labor overhead cost was 37 percent and its stores overhead cost was ten percent. That evidence established that both such overhead costs were determined by accounting methods prescribed by the Pennsylvania Public Utility Commission. The evidence further established that neither the labor overhead cost factor of 37 percent nor the stores overhead cost factor of ten percent was excessive compared to like overhead costs for similar type business enterprises, both public and private.

Thus, finding that the overhead cost factors were determined by proper accounting methods and that a labor overhead cost factor of 37 percent and a stores cost factor of ten percent are in line with other enterprises in the type business here involved, the sole question for determination is whether such costs should be included with the other costs of repair as damages recoverable against defendants.

## DISCUSSION

The basic rule of law to determine the amount of damages in circumstances where harm not amounting to total destruction has been done to a chattel is stated in section 928 of the Restatement, Torts, as follows:

"Where a person is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for (a) the difference between the value of the chattel before the harm and the value after the harm or, at the plaintiff's election, *the reasonable cost of repair or restoration where feasible*, with due allowance for any difference between the original value and the value after repairs, and (b) the loss of use." (Emphasis supplied.)

Pennsylvania courts have followed the Restatement Rule on many occasions. See Holt v. Pariser, 161 Pa. Superior Ct. 315, 54 A. 2d 89 (1947), and the many other cases cited in Holt.

However, we are unable to find any Pennsylvania case which has dealt *specifically with the question of whether, in a situation where the utility performs the repair work itself,* "labor overhead costs" and "stores overhead costs" should be included as items forming a part of the "reasonable cost of repair."

The question has arisen in several other states and the courts which have considered the question are divided. In Hartford Electric Light Company v. Beard, 3 Conn. Cir. 323, 213 A. 2d 536 (1965), the court held that plaintiff's overhead expenses, including payroll taxes, pension costs, vacations and holidays for employes and engineering and supervision personnel costs were recoverable where

plaintiff proved that such indirect costs were computed on sound accounting principles.

In Younger v. Appalachian Power Company, 214 Va. 662, 202 S.E. 2d 866 (1974), the court said that the cost of replacing a damaged pole and material included the cost of a new pole and material, the cost of wages of labor employed for replacement, cost of company-finance, fringe benefits relating to labor, cost of transportation and supervisory and engineering costs related to placement.

In Ohio Power Co. v. Zemelka, 19 Ohio App. 2d 213, 251 N.E. 2d 2 (1969), the court by way of dictum said that reproduction costs includes such items as cost of pole storage and administration and engineering expenses, because the application of sound accounting principles establishes that such indirect expenses are properly part of the damages suffered by a utility company when one of its poles is damaged. In U.S. v. Delaware Bay and River Pilots Association, 10 F. Supp. 43 (E.D.Pa. 1935), it was held that in computing damages for injury to a submarine, shop overhead may properly be included.

However, in Ohio Power Co. v. Huff, 12 Ohio Misc. 214, 231 N.E. 2d 897 (1967), Central Illinois Light Company v. Stenzel, 44 Ill. App. 2d 388, 195 N.E. 2d 207 (1964), and Louisiana Power & Light Company v. Smith, 343 So. 2d 367 (La. App. 1977), the courts have held that such overhead costs were not recoverable. In Ohio Power the court held that store costs, labor fringe benefits and administrative and engineering costs are *not* to be considered and included in arriving at the amount which plaintiff utility company was entitled to recover. In Central Illinois Light Company supervision costs, stores

expense and general overhead all were disallowed as not being directly connected with the replacement of an electric transmission pole. The court said such expenses would have been incurred and paid without regard to the breaking of the pole. A similar rationale was followed in Louisiana Power & Light Company where the court held that an "8% stores" charge should be disallowed as a cost of repair for the reason that these expenses would be incurred even if there were no tortfeasor. However, the court there did find that "fringe benefits costs" could be allowed if properly proven.

*We believe the better view is that indirect costs, such as labor overhead and stores overhead, are proper elements of damage to be included in computing the amount of reasonable cost of repair.* The argument that such overhead costs are part of the on-going expense of doing business and should not be included as part of the costs of replacing a particular pole is not persuasive. If plaintiff would have had an independent contractor to do the repair work, the independent contractor's overhead expenses would certainly have been included in the repair invoice and we cannot imagine in that circumstance defendants would contend that the repair invoice, if otherwise reasonable, was unreasonable because it included such overhead expenses. But a utility company such as plaintiff here cannot wait to have an independent contractor do the repairs. The utility is obligated to restore service as soon as possible and must, of necessity, use its own labor force and materials. *The overhead expenses attributable to such labor and materials are as much the natural and proximate result of the wrongful act complained of as are the wages,*

*materials and transportation required to repair the damage.*

## CONCLUSION

We conclude that *plaintiff's "labor overhead expenses" and "stores overhead expenses"* were correctly ascertained in the cases here involved in accordance with sound accounting principles and *are proper elements of damages to be included in computing the amount recoverable by plaintiff as damages for "reasonable cost of repair."*

## DECREE

And now, December 26, 1978, the court finds as follows:

1. In favor of Pennsylvania Electric Company and against Lewis Taube in the amount of $491.43.

2. In favor of Pennsylvania Electric Company and against Sam Melillo, Jr., in the amount of $706.84.

3. In favor of Pennsylvania Electric Company and against Wilmer Humphrey in the amount of $518.92.

4. In favor of Pennsylvania Electric Company and against Pauline A. Cielo and Kelly A. Cielo in the amount $495.54.

5. In favor of Pennsylvania Electric Company and against William Mortimer in the amount of $1,253.73.

---

Editor's note: See also, Pennsylvania Power and Light Co. v. Decker, 1 D. & C. 3d 303 (1966).