DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Huron Municipal Court, Erie County, Ohio, which awarded The Toledo Edison Company $5,090.73, plus costs, against appellants, Nicholas and Steven Teply. For the reasons that follow we reverse the decision of the trial court.
 {¶ 2} On January 23, 2001, appellant Nicholas Teply, son of Steven Teply, lost control of his vehicle and struck a utility pole owned and maintained by appellee. The parties stipulated to negligence and proceeded to trial before the court on the issue of damages only. Trial was held on April 26, 2002, wherein the sole witness was Roger McElroy, senior accountant for FirstEnergy Corporation. Appellee is a wholly owned subsidiary of FirstEnergy.
 {¶ 3} McElroy testified that Toledo Edison incurred the following costs in replacement of the pole:
 {¶ 4} The actual cost of materials used to replace the pole, totaling $383.98, plus $71.51 for the interest accrued on the cost of the repair between the time of the accident and the billing for the repair, plus $71.04 for "Material Handling Expense," which includes the cost of employing people to operate the storeroom, purchase the pole, account for the pole, load the pole on the truck to go to the site, and do the paperwork, for a total of $526.53 for material costs.
 {¶ 5} The cost of truck and equipment usage, including the use of six heavy line trucks for a total of 32 hours at a rate of $18.50 per hour, and the use of two light pick-up trucks for a total of 40 miles at a rate of $0.63 per mile, for a total transportation and equipment cost of $617.20.
 {¶ 6} Labor costs, including 33 hours of straight time and 30.5 hours of overtime (time and one half), for a total labor cost of $3,947.00.
 {¶ 7} The labor costs were broken down in more detail as follows:
 {¶ 8} "1 Direct Labor Cost $2,560.52
 {¶ 9} "2 Premium Pay 1,066.59
 {¶ 10} "3 Regular Pay (1 Less 2) 1,493.93
 {¶ 11} "4 Engineering Supervision — Salaries (4.09% of 3) 61.10
 {¶ 12} "5 Total (3+4) 1,555.03
 {¶ 13} "6 Engineering Supervision — Expenses (17.17% of 3) 256.51
 {¶ 14} "7 Total (5+6) 1,811.54
 {¶ 15} "8 INDIRECT LABOR
 {¶ 16} "9 All Other (48.99% of 5) 761.81
 {¶ 17} "10 Administrative Expenses (16.95% of 7) 307.06
 {¶ 18} "11 Total (7+9+10) $2,880.41
 {¶ 19} "12 Premium Pay (2) 1,066.59
 {¶ 20} "13 Total Labor Cost (12+13) $3,947.00"
 {¶ 21} McElroy testified regarding each category of labor costs charged. With respect to the expenses for material handling, engineering, and administration, he testified that these amounts did not reflect actual costs, but were computed through an allocation of expenses. The percentage allocated for each expense was derived from annual studies and reflected the amount of these expenses associated with this particular accident.
 {¶ 22} Specifically, with respect to the engineering and supervision salaries and expenses, McElroy testified that "[t]hose are expenses that are associated with the engineering that's required on any job that's done in regards to relocating or replacing." Although he testified that the engineering on this job could have been done by a field representative, field engineer, regional engineer, distribution field man, or engineering clerk, McElroy did not know whether or how much actual engineering duties were performed on this particular job or who actually performed the duties.
 {¶ 23} With respect to line 9, "All Other" expenses, McElroy testified that these expenses involved "costs associated with vacation pay, payroll taxes, health care, dental care, retirement, anything of that nature that the company's either stipulated to pay by law or contract." He also testified that Line 10, "Administrative Expenses", "include the costs, because of it being prohibitive to charge on a work order by work order basis, the costs associated with keeping the company going," including, "the accounts payable, payroll, plant accounting, those type of people."
 {¶ 24} In addition to the above, McElroy testified that he knew of no depreciation that had been factored into account and that, if it had been factored in, it would be reflected in the cost of the pole under "materials." McElroy also testified that the methodology of accounting and calculation, including the allocation of percentages for various expenses, was approved by the Public Utilities Commission of Ohio ("PUCO"), the Federal Energy Regulatory Commission ("FERC"), and "various other groups" that appellee does work for, such as, the Ohio Department of Transportation, the Army Corps of Engineers, and the Department of the Environment. He further testified that appellee derived no profit from the pole repair.
 {¶ 25} On May 10, 2002, the trial court found that McElroy's testimony established that appellee suffered damages totaling $5,090.73, representing both direct and indirect costs. The trial court further found that appellee "reasonably established its direct costs and further as to indirect costs has proved to the court that they were calculated in accordance with accounting principles both approved and audited by the PUCO and FERC."
 {¶ 26} Appellants appeal the decision of the trial court and raise the following sole assignment of error:
 {¶ 27} "The trial court's judgment was contrary to law and against the manifest weight of the evidence as plaintiff/appellee failed to prove its damages with reasonable certainty."
 {¶ 28} Specifically, appellants argue that because the indirect costs were derived from averages and computed through an allocation of percentages, appellee failed to prove its indirect costs with reasonable certainty. Appellants additionally argue that appellee is only entitled to the depreciated value of the pole and, insofar as McElroy offered no evidence of the value of the depreciated pole, appellee's costs were not proven with reasonable certainty. Appellants further argue that appellee is not entitled to its computation of "interest" on the material costs that allegedly accrued between the time the materials were used and when appellants were billed for the materials. We agree with appellants' arguments.
 {¶ 29} We recently considered similar issues in Ohio Edison Co.v. Fitzthum (Dec. 30, 2002), Ottawa App. No. OT-02-002, 2002 Ohio 7303, P8, wherein we stated the following principles of law:
 {¶ 30} "It is axiomatic that the purpose of an award of damages is to make the injured party whole. Columbus Southern Ohio Elec. Co.v. J.P. Sand Gravel Co. (1995), 22 Ohio App.3d 98, 100, citingColumbus Finance v. Howard (1975), 42 Ohio St.2d 178, 184. With some consistency, Ohio appellate courts have held that a utility is, `* * * entitled to compute its actual costs of repairs by adding indirect costs * * * if [such] costs are proved with reasonable certainty and have been correctly assessed in accordance with sound accounting principles.' OhioBell Tel. Co. v. Vaughn Bldg. Co. (Nov. 20, 1984), Franklin App. No. 83 AP-1093, citing Warren Tel. Co. v. Hakala (1957), 105 Ohio App. 459,460. The accounting principles imposed upon a utility by the Federal Energy Regulatory Commission and the Public Utilities Commission of Ohio have been deemed to be sound. Ohio Edison Company v. Roman (Sept. 16, 1998), Lorain App. No. 97 CA006735; Cleveland Elec. Illuminating Co. v.Spelic (Mar. 29, 1990), Cuyahoga App. No. 56650. Consequently, indirect costs may be awarded to a utility as part of damages, if proven with reasonable certainty. However, a plaintiff, `* * * may not recover damages that are conjectural and matters of guesswork * * *.' WarrenTel. Co., supra, at 460. The burden of proving damages is the plaintiff's. Broadvue Motors, Inc. v. Maple Hts. Police (1999),135 Ohio App.3d 405, 410."
 {¶ 31} In determining whether a party has met its burden of proof, we begin with the proposition that we must defer to the trial court as the finder of fact, insofar as the trial court is in the best position to weigh the credibility of the witnesses. Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80. As such, a reviewing court should not substitute its judgment for that of the trial court. Id. The decision of that trier of fact, be it judge or jury, will not be reversed as being against the manifest weight of the evidence as long as it is supported by some competent, credible evidence going to each of the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus; Vogel v. Wells (1991), 57 Ohio St.3d 91,96.
 {¶ 32} In this case, the trial court clearly believed McElroy's testimony that, with respect to this particular job, through acceptable accounting methods, a percentage could be allocated to determine the costs associated with the handling of materials and administrative expenses. Although the trial court in Ohio Edison Co. v. Fitzthum, supra, rejected similar testimony, we find that, in this case, the trial court's decision as to these costs was not against the manifest weight of the evidence. The direct labor cost associated with replacing the pole was documented, as was the actual cost of the materials used on the job. Hence, there was some competent, credible evidence upon which the trial court could rely in determining that the allocation of percentages, associated with the indirect costs for administrative and material handling expenses, were proved with reasonable certainty and established in accordance with sound accounting principles.
 {¶ 33} We find, however, that the trial court's award of indirect costs for "Engineering and Supervision" salaries and expenses was against the manifest weight of the evidence. Although McElroy testified that some engineering was necessary on every pole replacement job, he had no evidence concerning how much actual supervision or engineering was required for this pole replacement. Accordingly, we find that appellee failed to establish with reasonable certainty that the amounts charged for these costs were actually incurred as a result of the pole replacement in this particular case.
 {¶ 34} Additionally, we find that the trial court's decision was against the manifest weight of the evidence insofar as it failed to account for the depreciated value of the pole replaced. Considering that the purpose of an award of damages is to make the injured party whole, we find that the appropriate "measure of damages for the negligent destruction of a utility pole is the cost of the pole and the facilities attached thereto based on reproduction cost less accrued depreciation of the damaged pole and the facilities attached thereto." Ohio Power Co. v.Zemelka (1969), 19 Ohio App.2d 213, 216. See, also, Ohio Edison Co. v.Cutright (Sept. 13, 1991), Portage App. No. 90-P-2238. Appellee had the burden of proving its damages, but failed to account for the depreciated value of the pole being replaced. To this extent, we find that the trial court's award of damages was not supported by competent, credible evidence.
 {¶ 35} Lastly, we find that the trial court erred in awarding appellee $71.51 for the "interest" accrued on the cost of the repair. An award of prejudgment interest arising out of a civil action based on tortious conduct is governed by R.C. 1343.03(C). Insofar as there is no evidence that appellants "failed to make a good faith effort to settle the case," we find that appellee is only entitled to interest on a judgment against appellants "from the date the judgment, decree, or order is rendered to the date on which the money is paid." See R.C. 1343.03(B).
 {¶ 36} Based on the foregoing, we find appellants' sole assignment of error well-taken. The judgment of the Huron Municipal Court, Erie County, Ohio, is therefore vacated. We order this matter remanded to the trial court to recompute the damages awarded, consistent with this decision. Costs to appellee.
JUDGMENT REVERSED.
Peter M. Handwork, P.J., Richard W. Knepper, J., and Mark L.Pietrykowski, J., CONCUR.