[Cite as *Ohio Edison Co. v. Houser*, 2018-Ohio-4156.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Ohio Edison Company                      Court of Appeals No. E-17-063

    Appellee                              Trial Court No. CVE 1600146

v.

Jeanna M. Houser, et al.                 **DECISION AND JUDGMENT**

    Appellant                             Decided:  October 12, 2018

* * * * *

Amanda Rasbach Yurechko, for appellee.

Mitchell M. Tallan and Lori E. Thomson, for appellant.

* * * * *

**JENSEN, J.**

## I.  Introduction

**{¶ 1}** Appellant, Jeanna Houser, appeals the judgment of the Erie County

Municipal Court, awarding $6,100.01, together with interest, to appellee, Ohio Edison

Company, after finding that Edison was entitled to summary judgment on its claim for

damages arising out of a motor vehicle accident in which Edison's utility pole was damaged.[1]

## A. Facts and Procedural Background

{¶ 2} On November 18, 2016, Edison filed its complaint with the trial court, which alleged that appellant negligently operated a motor vehicle in Milan, Ohio, causing damage to one of Edison's utility poles. Edison claimed that its damages totaled $6,100.14, as set forth in an invoice that was attached to the complaint. According to the invoice, Edison incurred the following costs in repairing the damage caused by appellant:

| | |
|---|---|
| Material and Misc Cost | $623.17 |
| Labor Cost | $4,777.14 |
| Equipment Cost | $699.83 |
| Excess Height Cost | $0.00 |
| Set and Sell Cost | $0.00 |
| Contractor Cost | $0.00 |
| Total Amount Due | $6,100.14 |

{¶ 3} After appellant filed her answer, the matter proceeded through pretrial discovery, culminating in a motion for summary judgment filed by Edison on March 30, 2017. To support its damages claim, Edison attached several exhibits to its motion for summary judgment.

---

[1] The owner of the automobile, Melissa Houser, was also named as a defendant below on a theory of negligent entrustment. Prior to the court's decision granting summary judgment, Edison entered a dismissal pursuant to Civ.R. 41 as to Melissa. Thus, Melissa is not a party to this appeal.

**{¶ 4}** Edison's first exhibit consisted of the invoice that Edison attached to its complaint, along with a replacement cost report that detailed the material costs, transportation and equipment costs, and labor costs incurred by Edison during the replacement of the damaged utility pole. These numbers were corroborated in Edison's second exhibit, a work summary report from Edison's CREWS system. Edison's third exhibit further explained the material costs, transportation and equipment costs, and labor costs as follows:

|  |  |  |
|---|---|---|
| **Labor** | | |
| 1 | Direct Labor Cost | $4,232.51 |
| 2 | Premium Pay | $4,166.98 |
| 3 | Regular Pay (line 1 less line 2) | $65.53 |
| 4 | Engineering & Supervision | $0.00 |
| 5 | Total (line 3 + line 4) | $65.53 |
| 6 | Engineering & Supervision - Expenses | $0.00 |
| 7 | Total (line 2 + line 5) | $4,232.51 |
| 8 | Administrative Expenses (A&G of 12.6% + Pension Costs of 16.8% + OPEB of .49%) | $544.63 |
| 9 | TOTAL LABOR COST (line 6 + line 7 + line 8) | **$4,777.14** |
| **Equipment** | | |
| 10 | Transportation Equipment Expenses | $621.51 |
| 11 | Transportation Equipment Expenses - Light Trucks | $0.00 |
| 12 | Total Transportation Equipment Expenses | $621.51 |
| 13 | Power Operated Equipment Expenses | $0.00 |
| 14 | Total (line 12 + line 13) | $621.51 |
| 15 | Administrative Expenses (12.6% of line 14) | $78.32 |
| 16 | TOTAL EQUIPMENT | **$699.83** |
| **Material** | | |
| 17 | Material Costs - Store Issues | $423.35 |
| 18 | Material Handling Expense (see attached calculation) | $130.09 |
| 19 | Miscellaneous Costs - Material Purchases | $0.00 |

3.

| | | |
|---|---|---|
| 20 | Miscellaneous Costs - Other | $0.00 |
| 21 | Contract Costs | $0.00 |
| 22 | Meals | $0.00 |
| 23 | Total (line 17 + line 18 + line 19 + line 21) | $553.44 |
| 24 | Administrative Expenses [12.6% of (line 17+ line 18)] | $69.73 |
| 25 | TOTAL MATERIALS (line 20 + line 22 + line 23 + line 24) | **$623.17** |
| **Total Claim** | | **$6,100.14** |

**{¶ 5}** In addition to the foregoing exhibits, Edison attached three affidavits to its motion for summary judgment. The first affidavit came from Edison's line leader, Thomas Seyoc, who testified that he observed the damaged utility pole and reported that it was in excellent condition with no evidence of prior damage. Seyoc further explained the CREWS system and attested to the authenticity and accuracy of the work summary report contained in Edison's second exhibit.

**{¶ 6}** The second affidavit included testimony from Edison's custodian of records, Diana Minor, who authenticated Edison's summary judgment exhibits and testified that the life expectancy of an Edison utility pole is 80 years. According to Minor, the utility pole that was damaged by appellant was placed in service in 1970. Minor asserted that Edison receives no added benefit when it is forced to prematurely replace a utility pole. She also explained that the pole in question was regularly inspected by Edison and reported to be free of any damage that would have required its replacement in the near future.

4.

{¶ 7} The third affidavit submitted by Edison in support of its motion for summary judgment was that of Tim Wojtowicz. Wojtowicz testified that the costs of the repair, as outlined in Edison's exhibit, reflect the total expenses that were incurred by Edison in replacing the damaged utility pole. These costs include a line item for overhead or indirect costs labeled "accounting and general expense." Wojtowicz explained that a 12.6 percent multiplier is applied to the job-specific costs to capture the accounting and general expenses attributable to a particular job, whether or not the expenses of the job are recoverable from a third party. This multiplier was determined using an annual study performed by Edison in accordance with generally accepted accounting principles and state and federal regulations. The costs are calculated using Edison's SAP Accounting System, which "gathers, maintains and determines all costs incurred by Ohio Edison Company on construction projects." These indirect costs, according to Wojtowicz, reflect Edison's expenses for human resources, information technology, accounting, and legal support. These costs are "not directly chargeable, or tracked through Crews for each project."

{¶ 8} In response to Edison's motion for summary judgment, appellant filed a "Memorandum Contra Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment." In its memorandum, appellant conceded that fault for the accident was not in dispute and that Edison was entitled to damages for having to replace its utility pole. However, appellant took issue with Edison's method for calculating its damages as well as the amount of damages Edison claimed in its complaint and motion for summary

5.

judgment. According to appellant, Edison failed to take depreciation into account when it calculated its damages. Moreover, appellant urged that Edison's indirect costs were unrecoverable because they were not proven with reasonable certainty and had nothing to do with the accident at issue.

{¶ 9} In support of her opposition to Edison's motion for summary judgment, appellant relied upon the affidavit of Keith Hock, an expert in forensic accounting. Hock testified that Edison's use of a percentage multiplier to recognize indirect costs is a proper accounting method, but is not a proper methodology for purposes of establishing damages in a negligence action, because the multiplier takes into account costs from all construction projects, rather than tailoring the costs to this particular pole replacement. According to Hock,

> Using a multiplier that contains an unidentified range of "construction projects" with no understanding of what amount of administrative and general costs (numerator) is actually associated with the total cost for each type of construction project results in costs being allocated to a construction project without reasonable certainty that such costs are reflective of the true indirect costs for that particular project.

Therefore, Hock concluded that Edison should not be awarded indirect costs of $822.77.

{¶ 10} As to depreciation, Hock testified that the damages claimed by Edison should be reduced by the age of the utility pole that was replaced utilizing straight line depreciation. Under this approach, depreciation is calculated by dividing the replacement

6.

cost by the useful life of the asset (80 years in this case), and then multiplying the quotient by the number of years already expired at the time of the accident (45 years in this case). Hock stated that all costs, including labor, materials, and equipment, must be depreciated in order to prevent Edison from receiving a windfall and placing Edison in a better position than they were in prior to the accident. After removing Edison's claimed indirect costs of $822.77, Hock applied the foregoing depreciation formula to the remaining $5,277.37, and concluded that the appropriate measure of damages in this case was $2,308.85.

{¶ 11} Upon consideration of the parties' arguments, the trial court issued its decision on October 4, 2017. In its entry, the court found that Edison's replacement costs should not be depreciated, and that Edison was entitled to recover its indirect costs. Consequently, the court granted Edison's motion for summary judgment, and awarded Edison damages in the amount of $6,100.01, together with applicable statutory interest.[2] Appellant's timely appeal followed.

## B. Assignment of Error

{¶ 12} On appeal, appellant presents the following assignment of error for our review:

> The trial court erred when it held no genuine issue of material fact existed and granted summary judgment to appellee when conflicting

---

[2] Why the trial court awarded $6,100.01 to Edison, rather than the $6,100.14 set forth in Edison's complaint and motion for summary judgment, is unclear from the record.

7.

affidavits from the parties' experts and competing reasonable inferences from the facts created an issue of fact.

## II. Analysis

{¶ 13} In her sole assignment of error, appellant argues that the trial court erred in granting summary judgment to Edison and awarding damages in the amount of $6,100.01.

{¶ 14} A motion for summary judgment is reviewed de novo by an appellate court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "'When reviewing a trial court's ruling on summary judgment the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.'" *Gunsorek v. Pingue*, 135 Ohio App.3d 695, 700, 735 N.E.2d 487 (10th Dist.1999), quoting *Baker v. Buschman Co.*, 127 Ohio App.3d 561, 566, 713 N.E.2d 487 (12th Dist.1998).

{¶ 15} In order to obtain summary judgment at the trial level,

> [I]t must be determined that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219, 631 N.E.2d 150 (1994), citing *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 65-66, 609 N.E.2d 144 (1993); *see also* Civ.R. 56(C).

8.

**{¶ 16}** Here, appellant advances two arguments to support her contention that the trial court erroneously granted summary judgment in favor of Edison. First, appellant argues that the trial court erred in failing to apply depreciation to its damages calculation. Second, appellant argues that the trial court should not have awarded indirect costs to Edison because such costs were not proven with reasonable certainty. We will address these arguments in turn.

**{¶ 17}** In *Toledo Edison Co. v. Teply*, 6th Dist. Erie No. E-02-022, 2003-Ohio-1417, we examined the depreciation argument set forth by appellant in her brief. In *Teply*, we stated:

> Considering that the purpose of an award of damages is to make the injured party whole, we find that the appropriate "measure of damages for the negligent destruction of a utility pole is the cost of the pole and the facilities attached thereto based on reproduction cost less accrued depreciation of the damaged pole and the facilities attached thereto." *Id*. at ¶ 34, quoting *Ohio Power Co. v. Zemelka*, 19 Ohio App.2d 213, 216, 251 N.E.2d 2 (7th Dist.1969).

**{¶ 18}** Relying upon our holding in *Teply*, appellant contends that the trial court's failure to depreciate its damage award was erroneous as a matter of law. In response, Edison contends that there is a split of authority in Ohio on the issue of depreciation, and notes that the Ohio Supreme Court has yet to visit this issue. Edison cites two Ohio trial court cases, *Ohio Power Co. v. Johnston*, 18 Ohio Misc. 55, 247 N.E.2d 338 (C.P.1968),

9.

and *The Cleveland Illuminating Co. v. Cochran*, Cuyahoga C.P. No. CV-16-863685. Notably, these cases are not binding on this court, and do not provide a sufficient basis for us to refuse to follow our prior decision in *Teply*, which clearly provides for depreciation in this case. Moreover, the Eighth District recently reversed the trial court's decision in *Cochran*, based upon its finding that genuine issues of material fact existed stemming from the very same affidavits that were presented by the parties in this case, namely the Hock affidavit and the Wojtowicz affidavit. *Illuminating Co. v. Cochran*, 8th Dist. Cuyahoga Nos. 105887, 105888, 105889, and 105890, 2018-Ohio-2514, ¶ 12-20. Edison goes on to cite numerous cases from states other than Ohio, which have concluded that depreciation should not be applied to the replacement cost of utility poles in cases such as the one at bar. Once again, these cases are not binding on this court, and we are not persuaded that our decision in *Teply* should be overturned.

{¶ 19} In light of our decision in *Teply*, we find that the trial court erred in failing to reduce its award of damages by accounting for accrued depreciation. However, we reject appellant's argument, supported by Hock's affidavit, that all costs, including labor, materials, and equipment, should be depreciated. Our decision in *Teply* clearly states that accrued depreciation is to be applied to "the damaged pole and facilities attached thereto." Thus, the depreciation is limited to the cost of the pole and facilities. *See Ohio Edison Co. v. Royer*, 2018-Ohio-75, 92 N.E.3d 912, ¶ 19-21 (9th Dist.) (applying *Teply* and concluding that the trial court erred in its application of depreciation to "all of the

10.

direct damages" rather than simply the cost of the utility pole and the facilities attached thereto).

{¶ 20} According to the evidence presented, straight line depreciation is the appropriate method of depreciation in this case. The total cost of the pole and facilities, according to Edison's invoice and supporting exhibits, was $423.35. The parties agree that the expected life of a utility pole is 80 years, and this pole was placed in service 45 years prior to the accident. Applying straight line depreciation, the pole had already been in service for 56.25 percent of its useful life (45 / 80 = .5625). Therefore, the trial court should have reduced Edison's award by $238.13 (.5625 x $423.35 = $238.13). Its failure to do so constitutes error as a matter of law.

{¶ 21} We now turn to appellant's argument concerning the trial court's award of indirect costs. In *Ohio Edison Co. v. Fitzthum*, 6th Dist. Ottawa No. OT-02-002, 2002-Ohio-7303, we set forth the following standard concerning a utility's recovery of indirect costs in a negligence action:

> It is axiomatic that the purpose of an award of damages is to make the injured party whole. *Columbus & Southern Ohio Elec. Co. v. J.P. Sand & Gravel Co.*, 22 Ohio App.3d 98, 100, 489 N.E.2d 830 (10th Dist.1995), citing *Columbus Finance v. Howard*, 42 Ohio St.2d 178, 184, 327 N.E.2d 654 (1975). With some consistency, Ohio appellate courts have held that a utility is, "* * * entitled to compute its actual costs of repairs by adding indirect costs * * * if [such] costs are proved with reasonable certainty and

11.

have been correctly assessed in accordance with sound accounting principles." *Ohio Bell Tel. Co. v. Vaughn Bldg. Co.*, 10th Dist. Franklin No. 83 AP-1093, 1984 Ohio App. LEXIS 11645 (Nov. 20, 1984), citing *Warren Tel. Co. v. Hakala*, 105 Ohio App. 459, 460, 152 N.E.2d 718 (11th Dist.1957). The accounting principles imposed upon a utility by the Federal Energy Regulatory Commission and the Public Utilities Commission of Ohio have been deemed to be sound. *Ohio Edison Company v. Roman*, 9th Dist. Lorain No. 97 CA006735, 1998 Ohio App. LEXIS 4320 (Sept. 16, 1998); *Cleveland Elec. Illuminating Co. v. Spelic*, 8th Dist. Cuyahoga No. 56650, 1990 Ohio App. LEXIS 1316 (Mar. 29, 1990). Consequently, indirect costs may be awarded to a utility as part of damages, if proven with reasonable certainty. However, a plaintiff, "* * * may not recover damages that are conjectural and matters of guesswork * * *." *Warren Tel. Co., supra*, at 460. The burden of proving damages is the plaintiff's. *Broadvue Motors, Inc. v. Maple Hts. Police*, 135 Ohio App.3d 405, 410, 734 N.E.2d 417 (8th Dist.1999). *Fitzthum* at ¶ 8.

{¶ 22} Here, the trial court found that Edison was entitled to recover the indirect costs it identified in its exhibits that were attached to its motion for summary judgment. The indirect costs are identified in the exhibits under the heading "accounting and general expenses," and are calculated using a 12.6 percent multiplier. According to Wojtowicz, this multiplier is based upon an annual study performed by Edison in accordance with

generally accepted accounting principles and state and federal regulations. The study takes into account the cost of all of Edison's construction projects, not merely those related to pole replacement. According to testimony provided by a First Energy accountant, Eric Hermann, in the case of *Ohio Edison Co. v. Royer*, Akron M.C. No. 15CVE05635, Edison could track the actual indirect costs of each pole replacement, but chooses instead to apply a multiplier because "it's cheaper to allocate it through this method."[3]

{¶ 23} Courts, including this court, have examined Edison's use of a multiplier to calculate indirect costs in negligence cases such as the present case. For example, in *Toledo Edison Co. v. Czajka*, 6th Dist. Lucas No. L-02-1393, 2003-Ohio-3684, we found that Toledo Edison failed to prove its indirect damages with reasonable certainty because the annual study relied upon by Toledo Edison (which is the same annual study relied upon by Edison in this case), took construction projects other than pole repairs into consideration. *Id.* at ¶ 7.

{¶ 24} Additionally, the Ninth District in *Royer, supra*, 2018-Ohio-75, 92 N.E.3d 912 (9th Dist.), explored the question of whether a utility established its indirect costs to a reasonable certainty where it used the same multiplier that is at issue here. Upon review, the court found that the utility failed to establish its indirect costs with reasonable certainty despite the fact that the annual study from which the indirect costs were derived

---

[3] The trial transcript from *Royer* is part of the record in this case.

complied with sound accounting principles. *Id*. at ¶ 31-32. The court found that compliance with sound accounting principles was not all that is required to support an award of indirect costs; such costs must also be proven with reasonable certainty. *Id.* at ¶ 32. Our review of the decision in *Royer* reveals a striking similarity with this case in terms of the issues presented and evidence introduced to support the parties' arguments.

{¶ 25} In its appellate brief and at oral argument, counsel for Edison advanced the same argument that was rejected in *Royer* that "indirect costs can be proven by demonstrating that the cost of repairs was made in accordance with sound accounting principles mandated by FERC and the PUCO." We reject this argument, because it confuses the standard measure of damages in a negligence suit with generally accepted accounting principles. These two measures are not identical, which is why courts have carefully stated that indirect costs are recoverable only where the utility complies with sound accounting principles *and* proves its indirect costs to a reasonable degree of certainty.

{¶ 26} Having considered the trial court's grant of indirect costs in light of the record and the arguments of the parties in this case, we find that Edison's methodology for proving its indirect costs fails to meet the threshold of reasonable certainty. For that reason, we reverse the trial court's award of indirect costs, totaling $692.68 according to Edison's exhibits.

{¶ 27} Accordingly, appellant's sole assignment of error is well-taken.

14.

### III. Conclusion

{¶ 28} In light of the foregoing, we affirm, in part, and reverse, in part, the judgment of the Erie County Municipal Court. The trial court's grant of summary judgment in favor of Edison is affirmed, but its award of damages is modified to reflect the applicable accrued depreciation of $238.13 and the erroneously awarded indirect costs of $692.68. After taking into account those adjustments, judgment is entered in favor of Edison in the amount of $5,169.33. Edison is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part, and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

James D. Jensen, J.
CONCUR.

_____
JUDGE

_____
JUDGE

Christine E. Mayle, P.J.
CONCURS AND WRITES
SEPARATELY.

_____
JUDGE

**MAYLE, P.J.**

{¶ 29} I concur in the well-reasoned opinion of the majority. I write separately to highlight an additional reason why I believe Edison is not entitled to recover its indirect costs in this case: the economic-loss rule.

{¶ 30} The economic-loss rule is a long-standing principle of Ohio law which provides that "the mere coupling of personal injury or property damages is not enough to entitle a plaintiff to recover the indirect economic damages. The plaintiff must show that the indirect economic damages *arose from* the property damage or personal injury. There must be a direct causal nexus between the tangible damage and the indirect economic losses in order for the economic losses to be recoverable." *Queen City Terminals v. General Am. Transp. Corp.*, 73 Ohio St.3d 609, 615, 653 N.E.2d 661(1995).

{¶ 31} Edison maintains that it can recover indirect costs—which it characterizes as the costs of "running a business"— even though such costs are, admittedly, not attributable to the property damage at issue. Relying on the Ohio Supreme Court's decision in *Complete Gen. Constr. v. Ohio ODOT*, 94 Ohio St.3d 54, 2002-Ohio-59, 760 N.E.2d 364 (2002), Edison argues that "the very concept of indirect expenses is meant to recover the costs not directly billable or attributable to any one project. Indirect costs are the expenses involving running a business and are not attributable to any one project."

{¶ 32} But *Complete Gen. Constr.* addressed when indirect costs are recoverable as *contract* damages by contractors in public construction delay cases. Here, Edison is seeking to recover indirect costs as *tort* damages in a negligence case. That is a crucial

16.

distinction. Generally speaking, a plaintiff may not recover purely economic losses—i.e., economic damages that did not "arise from" personal injury or property damage —in a negligence case. "Indirect economic damages that do not arise from tangible physical injury to persons or from tangible property may only be recovered in contract." *Queen City* at 615. Thus, unless privity of contract or some "nexus * * * that can serve as a substitute for contractual privity" exists, pure economic losses cannot be recovered in a negligence action. *Floor Craft Floor Covering, Inc. v. Parma Comm. Gen. Hosp. Assn.*, 54 Ohio St.3d 1, 8, 560 N.E. 2d 206 (1990).

{¶ 33} Edison does not claim to be in privity of contract with appellant, nor does it assert that any substitute for contractual privity exists. Accordingly, Edison may recover only those costs that it establishes, with reasonable certainty, arose from appellant's negligent damage to its property. Such costs may include indirect overhead costs only if Edison establishes a "but for" connection between the negligent property damage and its indirect costs. "The question in each case to be decided by the trier of fact is what is the amount of indirect overhead costs that were directly and proximately caused by defendant's negligence." *Cleveland Elec. Illuminating Co. v. Spelic*, 8th Dist. No. 56650, 1990 Ohio App. LEXIS 1316, *6-7 (Mar. 29, 1990); *see also CG&E Co. v. Brock*, 1st Dist. Hamilton NO. C-830137, 1983 Ohio App. LEXIS 11225, *13-14 (Dec. 21, 1983) ("The question in each case to be decided by the trier of fact is:  what is the amount of indirect costs (overhead) which has been proved with reasonable certainty to have been directly and proximately caused by defendant's negligence?").

17.

{¶ 34} The record reflects that Edison failed to meet its burden to set forth evidence establishing a causal nexus between appellant's negligence and those indirect costs that Edison sought to recover from appellant—i.e. a select portion of Edison's general expenses for human resources, information technology, accounting, and legal support. Instead, Edison essentially argued that it did not need to establish a "but for" connection between appellant's negligent conduct and its general business expenses as long as it calculated its expenses according to sound accounting principles. But, as discussed, I believe that this is an untenable position because it ignores the economic-loss rule, which requires a "direct causal nexus" between any incurred costs and the property damage at issue. *Queen City* at 615. That, in my opinion, should be an important part of the equation when considering whether indirect costs are proven with reasonable certainty in a negligence action.

{¶ 35} Accordingly, while I agree with the majority that Edison failed to prove its indirect damages with reasonable certainty, I would also specify that Edison failed to prove with reasonable certainty that such costs were directly and proximately caused by appellant's negligence.