# Ohio Power Co. *v.* Johnston.

**56**

Common Pleas Court of Hancock County.

Mr. Fred L. Form and Mr. Russell E. Rakestraw, for plaintiff.

Mr. Clyde H. Collins, for defendant.

MOORHEAD, J. The Ohio Power Company brought this action for damages occasioned by the breaking of said power pole. The defendant, Carl Roger Johnston, was the owner and operator of a motor vehicle, which, on June 17, 1966, went over the curb along the east side of Western Avenue in the city of Findlay, Ohio, and struck a power pole of the plaintiff, which pole was then a part of plaintiff's power system along said Western Avenue.

Plaintiff claims damages totaling $855.78, which is broken down as follows:

| | | | |
|---|---|---|---|
| Materials | $533.27 | | |
| Less salvage | 245.41 | $287.86 | |
| Plus Stores Expense | 51.19 | 339.05 | |
| Total Material Costs | | | $339.05 |
| Repair of Damaged Property—Labor & Material | | | 75.30 |
| Labor | | | |
| 4 hours at Regular Rates | 13.94 | | |
| 33½ hours at Rate and ½ | 161.54 | 175.48 | |
| Fringe Benefits | | 55.63 | |
| Employees' Benefits | | 7.16 | |
| Supervision & Engineering | | 171.78 | |
| Total Labor costs | | | 410.05 |
| Equipment Expense—9½ hours | | | 31.38 |
| | | | |
| TOTAL | | | $855.78 |

Both parties having orally waived a trial by jury and having agreed that the court may sit as court and jury, this cause came before the court on the petition of the plaintiff, the answer of the defendant, the written interrogatories of the defendant, duly answered under oath by the plaintiff, the stipulations of the parties, and the evidence.

From the evidence and testimony produced by both

plaintiff and defendant with regard to the question of defendant's liability and negligence, and upon the close of all the evidence, it is the decision of the court that the defendant was negligent in the operation of his motor vehicle and proximately caused damages to plaintiff, and accordingly, is liable to the plaintiff for damages sustained by plaintiff in defendant's striking plaintiff's power pole.

The real problems involved in this cause are those relating to the items of damages claimed by the plaintiff. Plaintiff's primary contention with regard to the damages sustained by it are that the pole is a part of a power distribution system; that the measure of damages is the cost of repairs incurred by the plaintiff, which includes certain indirect expenses; defendant urges that the pole is a distinct and separate item; that the attached fixtures, including transformers, had been in service for various periods of time, and accordingly, there should be a depreciation factor applied to the materials damaged and required to be replaced, or repaired, and that plaintiff's indirect expenses are too remote and speculative, and are not directly attributable to the alleged negligence of the defendant.

Both plaintiff and defendant presented their respective cases, utilizing the theory of damages as being that of cost of repairs. In addition, it is apparent from the briefs filed by plaintiff and defendant that the parties are in agreement that the measure of damages is to be determined by the cost of repair. This basis for determining damages is recognized in Ohio as the more accurate method of measuring damages where the property damaged is not an item generally bought and sold on the open market and where the concept of "market value" is virtually impossible to apply. See *Northwest Natural Gas Company* v. *First Congregational Church*, 126 Ohio St. 140 at p. 150; also, *Wooster Feed Manufacturing Company* v. *Village of Tallmadge*, 82 Ohio App. 499. The rule in Ohio is stated generally in 16 Ohio Jurisprudence 2d, Damages, Section 72, page 204:

"* * * where, though the articles in question have some market value, such value is clearly not the true test of the injury suffered by the plaintiff, or where, from the

situation of the property, *or its character,* or from some other cause, it cannot be said to have a market value."

There was no dispute but what there was need for the repair work to be done, nor was it suggested, or established by the defendant that any lesser expenditure would have sufficed to make good the damage done. Rather, defendant argues that the work thus done served, not only to make good the damage inflicted, but also conferred upon plaintiff a further benefit, for which there should be an appropriate reduction.

This method of determining the damages will determine the amount. The principle of law in Ohio with regard to recovery of damages in a tort action is well set forth in 16 Ohio Jurisprudence 2d, Damages, Section 8, pages 143, 144:

"The cardinal and fundamental rule of the law of damages is that the injured party shall have compensation for the injury sustained. Compensatory damages are intended to make whole the plaintiff for the wrong done to him by the defendant. Compensation which in theory at least will make the party injured whole, is the rule, whether the action is *ex delicto* or *ex contractu,* * * *."

In applying this general principle, it is now necessary for the court to determine whether or not the repairs made by the plaintiff in this action do more than make the plaintiff whole.

This issue appears somewhat new in the state of Ohio, and accordingly, cases involving this issue are lower court decisions, and it, therefore, becomes encumbent upon this court to examine decisions from other jurisdictions, which utilize and apply the same general rules of law in actions of this nature.

The Supreme Court of New Jersey, in the case of *New Jersey Power and Light Company* v. *Mabee* (1963), 41 N. J. 439, 197A 2d 194, in determining the question now before this court, held:

"The difficulty is that there is not discernible life expectancy of an individual pole and that although the period of 36 years is used for accounting purposes, the pole that was destroyed might well have served for a much longer

period and the new pole may last for but a few years. Moreover, because of changes in circumstances or in technology, it cannot be known whether the pole would ever have been replaced. In short, at least upon the record before us, we cannot say with reasonable assurance that the installation of a new pole did more than remedy the wrong done. An injured party should not be required to lay out money, as defendants' approach would require, upon a questionable assumption that one day its worth will be recaptured."

This reasoning was also followed in the case of *Carolina Power and Light Company* v. *Paul* (1964), 261 N. C. 710, 136 Southeastern Section 103.

Based upon the foregoing case law and the facts of this case, it is the opinion of the court that the subject power pole, and its attached fixtures and equipment, were an integral part of a power distribution system, and that there cannot be a proper evaluation of the value of a particular item, or items, without reference to the value of the entire system. It is, therefore, impractical to attempt to apply a measure of damages, based on the difference in value before and after the accident. The fact that the cost of repairs may exceed the value of the power pole and fixtures replaced is immaterial, since the subject items, *i. e.*, pole, transformers and fixtures, cannot be properly evaluated without reference to the value of the entire system. Since the basis of the theory of damages is to make whole the plaintiff for the wrong done to him by the defendant, the court, in determining the question of applying depreciation to the damaged property, determines that such depreciation need be applied only where the cost of repairs would do more than make the plaintiff whole. In this case, the court feels that it cannot be said that the repairs made do more than make the plaintiff whole. See *Hartford Electric Light Company* v. *Beard* (1965), 3 Conn. Cir. 323, 213A 2d 536.

The question here presented is even more unique, in that the plaintiff makes claim for its expenses of repair as an out-of-pocket expense, rather than a statement of cost from a repairman, who might have contracted with the

plaintiff to repair the damage. The distinguishing feature of the case at bar is the fact that the repairs were made by the injured party and the amount claimed derived from cost and accounting formulae established and utilized by plaintiff in determining the value of plaintiff's own services.

In arriving at a decision, the court must begin with the logical deduction that merely because the plaintiff utilized materials and services within its own corporate structure, it does not follow that such services and materials are without value, or have a lesser value than if supplied by an independent contractor. Certainly, if plaintiff had contracted out the repair job to a private contractor, the items claimed by plaintiff in the form of stores expense, fringe benefits, and engineering and supervision would be included in the contact price for such repairs, and there is no serious contention that defendant could not be compelled to pay the full contracted cost of repairs. It is, therefore, the opinion of the court that the inclusion of the so-called indirect expenses, i. e., fringe benefits, supervision and engineering, and stores expense, are properly includable as items of damage to be recovered by the plaintiff in this cause. The court's determination as to this inclusion is further substantiated by the case of *Warren Telephone Company* v. *Hakala*, 105 Ohio App. 459, wherein the court permitted the inclusion as cost of repairs of all indirect costs, which had been correctly computed in accordance with sound accounting principles. Certainly, to deny plaintiff recovery for those indirect expenses on the basis that they do not represent costs directly related to and involved in the particular repair job, would be to make the plaintiff expend funds of its own to remedy an injury occasioned by the defendant's tortious conduct. Certainly, if this court were to deny recovery of indirect expenses, it seems only logical that all courts in future cases involving cost of repairs to all types of personal property would be required to accept only actual wages paid and actual wholesale costs of repair parts in determining the measure of damages, thus eliminating the repairmen's margin of profit and overhead expenses. Assuredly, it is not this

court's intention, nor the intention of the law in Ohio to eliminate overhead expenses and profit from repairmen engaged in repairing damage occasioned by the wrongful conduct of a third person.

The court comes now to determine what evidence is required on behalf of the plaintiff to establish those indirect expenses, for which it claims compensation. The law in Ohio, as established in the case of *Warren Telephone Company* v. *Hakala*, 105 Ohio App. 459, *supra*, is to the effect that a plaintiff in this type of action may not recover damages which are conjectural and matters of guesswork, but if the plaintiff is able to prove with reasonable certainty those indirect costs of repair, and if those indirect costs have been correctly made in accordance with sound accounting principles, such costs are a proper element of damage, which plaintiff may recover. Admittedly, it is difficult for a plaintiff in this action to produce an accurate breakdown as to indirect expenses. However, it is the opinion of the court that the evidence produced by the plaintiff would establish with reasonable certainty that the overhead costs had been correctly made in accordance with sound and accepted accounting principles and procedures. In addition, defendant presented no testimony on his behalf that such costs were incorrectly determined, or that they were not determined in accordance with sound accounting principles, nor did they offer any evidence which in any way diminished the weight which the court might give to the evidence presented by the plaintiff. It is, therefore, the opinion of the court, from the evidence presented, that plaintiff's indirect costs were proven with reasonable certainty and in accordance with sound accounting principles and are, therefore, includable as a proper element of damage. It appears to the court, sitting as court and jury, that plaintiff has established by the required degree of proof the items alleged by it as damages and that such amounts will no more than make the plaintiff whole, *i. e.*, that it will not be worse off by reason of damages caused by the defendant, and accordingly, the court renders judgment in favor of the plaintiff and against the defendant in the sum of $855.78, together with costs.