DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Elmer Brown, II, appeals the judgment of the Summit County Court of Common Pleas, which entered judgment in favor of appellee, Akron Barberton Cluster Railway Co. ("ABC Railway"), in the amount of $82,428.69, plus interest and costs. This Court affirms.
 {¶ 2} ABC Railway filed a complaint alleging that appellant caused damage to its property during the course of an automobile accident. ABC Railway filed a motion for default judgment, and the trial court granted default judgment in favor of appellee and awarded damages in the amount of $87,000.00, plus interest *Page 2 
and costs. Appellant filed a motion to vacate the default judgment for the reason that he was never served with the complaint which had been mailed to an incorrect address.
 {¶ 3} The parties subsequently filed a joint stipulation, wherein they agreed that the trial court may vacate the default judgment. Appellant further admitted his liability for the accident which damaged railway property. The parties stipulated that the sole issue to be determined at trial was the amount of damages sustained by ABC Railway as a proximate cause of appellant's negligence. The parties stipulated prior to trial that the replacement cost for the repairs done to railroad signal system and equipment at the railway crossing was $82,428.69.
 {¶ 4} The matter proceeded to a bench trial. At the conclusion of trial, the trial court set out a post-trial briefing schedule for the parties. ABC Railway filed its post-trial brief and proposed findings of fact and conclusions of law on September 14, 2006. Appellant filed his post-trial brief and proposed findings of fact and conclusions of law on September 27, 2007. ABC Railway filed its reply on October 10, 2006.
 {¶ 5} On October 13, 2006, the trial court issued its judgment entry in which it granted judgment in favor of ABC Railway and awarded damages in the amount of $82,428.69, plus interest and costs. Appellant timely appeals the calculation of damages, raising one assignment of error for review. *Page 3 
 II. ASSIGNMENT OF ERROR "IN AN ACTION BROUGHT BY A RAILROAD FOR THE NEGLIGENT DESTRUCTION OF PROPERTY (IN THIS CASE, A SIGNAL BOX), A TRIAL COURT'S DECISION AS TO THE VALUE OF THE DAMAGED PROPERTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND UNSUPPORTED BY THE EVIDENCE IF THE RAILROAD FAILS TO PRESENT TESTIMONY TO ACCOUNT FOR THE DEPRECIATED VALUE OF THE PROPERTY BEING REPLACED."
 {¶ 6} Appellant asserts that the trial court's decision as to the value of the damaged property is against the manifest weight of the evidence. Specifically, appellant argues that the trial court's award of $82,428.69 is against the manifest weight of the evidence, because the trial court failed to consider any evidence regarding the depreciated value of the signal box, which was completely destroyed due to appellant's negligence. This Court disagrees.
 {¶ 7} In this case, the parties stipulated to appellant's liability and that appellee spent $82,428.69 as a result of appellant's negligence. The parties, however, consistently disputed the measure of damages to be used to calculate the damages award, as well as whether appellee expended funds to repair versus replace the signal box. Although the trial court stated in its findings of fact that "[t]he parties also agreed that the Plaintiff incurred expenses for labor and equipment to repair and restore the damaged railroad crossing installation in the sum of $82,428.69[,]" there was no such stipulation as to "repair and restoration]" *Page 4 
in the record. In fact, the parties consistently disputed whether the equipment was "repaired" or "replaced."
 {¶ 8} As an initial matter, this Court notes that, as a general rule, the appropriate measure of damages in a tort action is the amount which will compensate and make the plaintiff whole. Pry or v. Webber (1970),23 Ohio St.2d 104, paragraph one of the syllabus; see, also, Henry v.Akron (1985), 27 Ohio App.3d 369, 375. The burden of proving damages lies with the plaintiff, in this case appellee. Toledo Edison Co. v.Teply, 6th Dist. No. E-02-022, 2003-Ohio-1417, at ¶ 30, citingBroadvue Motors, Inc. v. Maple Hts. Police (1999), 135 Ohio App.3d 405,410.
 {¶ 9} Donald Miller, Supervisor of operations for Railroad Traffic Control, Inc., testified that his company has a contract with appellee to perform its regulated inspections, repairs and replacements, as needed. He testified that all railroad crossings are regulated by both the Federal Railway Administration ("FRA") and the Public Utilities Commission of Ohio ("PUCO") and that regulations require that all crossings be maintained at one hundred percent operation. Mr. Miller testified that, if a crossing fails, he must determine the cause of the problem and fix it to return the crossing to one hundred percent operability.
 {¶ 10} Mr. Miller testified that a January 5, 2004 report indicated that the crossing at issue was at one hundred percent operability prior to Mr. Brown's accident. He testified that, after the January 14, 2004 accident, the crossing signal *Page 5 
box was destroyed so that the crossing was not up to operability standards and required a "flag order." He explained that someone then had to get off every train, stop traffic at the crossing, bring the train across the crossing, then remount the train. Mr. Miller testified that those interim measures to allow a train to cross did not relieve the railway of its responsibility to repair the crossing to its earlier condition of one hundred percent operability.
 {¶ 11} He testified that, as a result of appellant's negligent act, everything inside the control box at the crossing was destroyed. He testified that the signal wires were broken at different locations from being stretched. He testified that, because the wires were completely severed from the case, they had to replace them. Mr. Miller testified that Mr. Brown's act caused electrolyte fluid to be spilled throughout the entire case, which would "eat" the relays. He testified that the old double case was replaced with a new single case. In conclusion, Mr. Miller testified that the signal equipment was "a total loss." Mr. Miller then testified regarding the new equipment, box, wires, conduits, and sensor system installed to make the crossing one hundred percent operational. While the signal box was damaged so that it was not amenable to repair, the destruction of the signal box served to make the entire railroad crossing inoperable. By replacing the crossing components damaged by Mr. Brown, ABC Railway effectively repaired its crossing, as it was the use of the crossing which was impaired by Mr. Brown's negligence, not merely the signal box. Under these circumstances, there is *Page 6 
competent, credible evidence to support the trial court's finding that "the only evidence regarding damages was the cost of repairs."
 {¶ 12} Regarding the proper measure of damages, appellant argues that railroad signal boxes are analogous to utility poles. In the utility pole cases, the courts held that the appropriate measure of damages for the negligent destruction of a utility pole is the cost of the pole and facilities attached to it, minus depreciation of the damaged pole and facilities attached. See, e.g., Toledo Edison Co. v. Teply, 6th Dist. No. E-02-022, 2003-Ohio-1417, at ¶ 34; Ohio Power Co. v. Zemelka (1969),19 Ohio App.2d 213, 216; Ohio Edison v. Cutright (Sept. 13, 1991), 11th Dist. No. 90-P-2238. This Court finds such cases distinguishable, because in the present case it was not merely the railroad signal box which was destroyed. Rather, it was the uniquely configured railroad crossing itself that was rendered inoperable by Mr. Brown's negligent destruction of the signal box.
 {¶ 13} Appellee argues that the trial court's award is not against the manifest weight of the evidence, because the appropriate measure of damages should not consider depreciation. Appellee argues that the railroad crossing was unique, so that it is not feasible to determine fair market value. Appellee relies on Ohio Power Co. v. Johnston (1968),18 Ohio Misc. 55, 57, for the proposition that "where the property damaged is not an item generally bought and sold on the open market and where the concept of `market value' is virtually impossible to apply[,]" the measure of damages should be determined by the cost of repair. *Page 7 
 {¶ 14} The Ohio Supreme Court has held:
 "`Where personal property is without market value, then the law allows the next best evidence to be given to ascertain its value. In such cases, evidence as to cost and other considerations which may affect value or which tend to show its worth, actual, real or intrinsic, is admissible.' [20 American Jurisprudence, 339, Section 372.]
 "McCormick on Damages (Hornbook Series), page 170, states the rule as follows: `The rule that the market value is the measure of damages for the wrongful conversion of personal property is subordinate to the fundamental rule that the owner must be fully compensated.'
 "The general rule as deduced from the authorities may be stated thus: Market value is the standard which the courts insist on as a measure of direct property loss, where it is available, but that is a standard not a shackle. When market value cannot be feasibly obtained, a more elastic standard is resorted to, sometimes called the standard of value to the owner. This doctrine is a recognition that property may have value to the owner in exceptional circumstances which is the basis of a better standard than what the article would bring in the open market.
 "The Ohio rule is stated in 17 Ohio Jurisprudence, 473, Section 379: `It is established in Ohio that the owner of personal property, because of such ownership, has a sufficient knowledge of its value to be qualified to give an opinion thereon which will be some evidence of the actual value, though not conclusive. The rule is especially applicable where the property may have a peculiar worth to plaintiff" Bishop v. East Ohio Gas Co. (1944), 143 Ohio St. 541, 545-546
 {¶ 15} Leslie Ashley, Vice President and General Manager of ABC Railway, testified that each railroad crossing is unique in regard to the specifications of its signal system. He further testified that the component parts which go into those systems are manufactured by only three manufacturers in the country and that the components must be obtained directly from the *Page 8 
manufacturers. He testified that the final configuration of components creates an end product unique to meet the needs of a particular crossing.
 {¶ 16} Mr. Miller testified that every railroad crossing has different requirements based on an evaluation involving the trains, number of tracks and the highway. He testified that crossing mechanisms are not interchangeable and cannot be sold.
 {¶ 17} Therefore, this Court finds that the trial court's finding that appellee's destroyed property was unique, and thus not susceptible to a determination of "market value," is supported by competent, credible evidence.
 {¶ 18} Appellee argued in its brief that Ohio Jury Instruction § 23.42 "provides guidance on the area of damages for the total destruction of personal property." OJI § 23.42 provides, in relevant part:
 "2. TOTAL DESTRUCTION. If property for personal use is destroyed, the measure of damage is the reasonable value to the owner. This does not necessarily mean the market value, because property of a strictly personal nature may have a nominal market value if sold as used property, but would have a higher reasonable value to the owner. In arriving at an amount, you may consider the original cost, the cost to replace such property less reasonable depreciation for its condition and use; the uses which the plaintiff has for the property; and other facts in the evidence. But the test you apply is the reasonable value of the article to the owner at the time."
 {¶ 19} Appellee further argues that, while the trier of fact may, he is not required to, consider the cost to replace the property or its depreciated value. Considering that the underlying purpose of a damages award is to make the *Page 9 
plaintiff whole, this Court finds that the trial court's finding that depreciation should not be considered is supported by competent, credible evidence.
 {¶ 20} Both Mr. Miller and Mr. Ashley testified that a railway crossing only has value when it is functioning at one hundred percent. Mr. Ashley testified that his office does not keep track of depreciation, because either the system works or it does not. He explained that, when it works, it is worth everything; but when it does not work, it is not worth anything. Accordingly, the trial court's finding that the uniqueness of the repaired property made the determination and application of "market value" infeasible to a damages calculation is supported by competent, credible evidence.
 {¶ 21} The evidence further supports a finding that appellee replaced the destroyed system in the most economically feasible manner possible. Mr. Miller testified that it would have cost twice as much to repair the crossing with the type of components which were destroyed, rather than with newer technology. Mr. Ashley testified that he directed Mr. Miller to repair the crossing in the most economically feasible manner possible. The evidence shows that ABC Railway mitigated its damages by utilizing the newer, less expensive technology instead of paying twice as much to install an identical system.
 {¶ 22} Non-equipment costs, including damages for costs such as labor, preliminary engineering and supervision costs, which were proven, are necessary to make ABC Railway whole. In this case, Mr. Miller testified that all the non-equipment *Page 10 
costs were necessary and proper, and appellant did not dispute this. The evidence shows that non-equipment costs totaled $41,616.69. Appellee is entitled to damages in this full amount. As to equipment, appellee presented evidence that it spent $37,139.00 for signal material, $2,168.00 for insulated joints, and $1,505.00 for commercial material consisting of cable, wire, conduit and fittings, for a total of $40,812.00. This was the amount necessary to make ABC Railway whole, while mitigating its damages. Accordingly, the trial court's award of damages to ABC Railway in the amount of $82,428.69 is supported by competent, credible evidence.
 {¶ 23} Appellant's assignment of error is overruled.
 III. {¶ 24} Appellant's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 11 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 SLABY, P. J. WHITMORE, J. CONCUR *Page 1