[Cite as *Ohio Edison Co. v. Royer*, 2018-Ohio-75.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

OHIO EDISON COMPANY

    Appellant

    v.

CHARLES ROYER

    Appellee

C.A. No.     28468

APPEAL FROM JUDGMENT
ENTERED IN THE
AKRON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    15CV05635

DECISION AND JOURNAL ENTRY

Dated: January 10, 2018

---

SCHAFER, Presiding Judge.

{¶1}    Plaintiff-Appellant, Ohio Edison Company, appeals the judgment of the Akron Municipal Court. For the reasons that follow, we affirm in part, and reverse in part.

I.

{¶2}    Ohio Edison filed a complaint against Defendant-Appellant, Charles D. Royer, alleging that Mr. Royer negligently operated his automobile and caused a collision that resulted in damage to Ohio Edison's property. Ohio Edison claimed that Mr. Royer's negligence caused damage to its utility pole located on Canton Road in Akron, Ohio. Ohio Edison claimed damages in the amount of $4,112.76: the cost incurred to repair the damage to the utility's electrical distribution system by replacing the damaged pole.

{¶3}    Before proceeding to a bench trial, the parties entered joint stipulations upon the record. Mr. Royer stipulated to liability. The parties agreed that just two issues remained for the trial court to determine: (1) whether indirect costs Ohio Edison claimed due were properly

calculated pursuant to law; and (2) what amount of the direct costs claimed due were properly recoverable as damages under Ohio law.

{¶4} The matter proceeded to a bench trial on July 15, 2016, and, upon the conclusion of the proceedings, the trial judge took the matter under advisement. The trial court issued its judgment entry with findings of fact and conclusions of law on November 29, 2016. The court granted judgment in favor of Ohio Edison and against Mr. Royer in the amount of $1,721.64, together with costs and statutory interest from the date of judgment.

{¶5} Ohio Edison timely appeals the judgment entry, raising two assignments of error for our review.

II.

**Assignment of Error I**

**The trial court erred when it applied depreciation to Ohio Edison's repair costs.**

{¶6} In its first assignment of error, Ohio Edison argues the trial court erred when it depreciated Ohio Edison's repair costs. In the first instance, Ohio Edison contends that the court erred in depreciating any of its repair costs, arguing that it is entitled to recover its entire repair costs when an individual negligently damages its electric distribution system. Alternatively, Ohio Edison argues that depreciation should have been limited to the material costs of the utility pole, rather than depreciation of all of the repair costs.

{¶7} Ohio Edison has confined this assignment of error to raise a pure question of law: whether the trial court erred in relying upon a legal standard to allow for depreciation of the amount of the repair costs awarded Ohio Edison as damages. Whether a "trial court correctly applied the law to the facts of a case presents a question of law," and we apply a de novo standard of review to questions of law. *Copley Twp. v. City of Fairlawn*, 9th Dist. Summit Nos.

27010, 27012, 27040, 2015-Ohio-1121, ¶ 16; quoting *Fuline v. Green*, 9th Dist. Summit Nos. 25704, 25936, 2012-Ohio-2749, ¶ 6. Therefore, we consider the question of law without deference to the trial court's decision, while affording due deference to the findings of fact in the trial court's judgment. *See Id.*

A. Applicability of Depreciation

{¶8} In the judgment entry, the trial court incorporated the parties' stipulated statement of costs into the findings of fact. Setting aside the issue of indirect costs, the stipulated direct costs associated with the repair totaled $3,349.49. The court found, "[a]t full cost recovery, Ohio Edison would have been entitled to receive $3,349.49 in direct costs incurred for the utility pole replacement." Ohio Edison claims it is entitled to full recovery of direct damages, and alleges error in the trial court's subsequent analysis taking into consideration the "depreciation value" and reducing the amount of direct costs Ohio Edison could recover from $3,349.49 to $1,721.64.

{¶9} The issue with which we are presented is twofold: whether it is appropriate for a court to reduce a damage award by applying depreciation to the cost to repair damaged property in a negligence action, and, if so, what portion of those costs is depreciable? The parties agree that the appropriate measure of damages is the cost of repair. Their dispute centers on what measure of damages will make Ohio Edison "whole" without providing overcompensation. Ohio Edison argues that, to be made whole, it is entitled to recover the entire cost of repair without depreciation. It is Ohio Edison's contention that replacement of the pole restored its electric distribution system to what it was before the pole was destroyed due to Mr. Royer's negligence. Thus, Ohio Edison argues the repair merely permitted it to continue providing the utility service to its customers, which makes it whole again, but no better off.

{¶10} Mr. Royer contends that a proper damage award must apply depreciation to the repair costs to avoid overcompensating Ohio Edison. His position is that Ohio Edison lost an aging pole, and that Ohio Edison would be overcompensated by the new pole giving it an additional 34 years of anticipated service. Therefore, Mr. Royer asserts that the trial court appropriately compensated Ohio Edison for the value of the remaining years of useful life that it expected from the damaged pole, and properly depreciated the repair costs to account for the additional years of service Ohio Edison now expects to receive from the new pole.

{¶11} Generally, the appropriate measure of damages is the amount "which will compensate and make the plaintiff whole." *Pryor v. Webber*, 23 Ohio St.2d 104, 107 (1970). An injured party "should be neither undercompensated nor overcompensated," and bears the burden of proving the pecuniary value of the injury. *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 184 (1975). The parties do not dispute that the utility pole is real property with no real market value. When property has no real market value, "damages [can] be awarded based on the reasonable cost of restoration, with consideration of the condition of the property prior to the damage." *Martin v. Design Constr. Servs.*, 121 Ohio St.3d 66, 2009-Ohio-1, ¶ 21, citing *Northwestern Ohio Natural Gas Co. v. First Congregational Church*, 126 Ohio St. 140, 150-151 (1933).

{¶12} The trial court stated in its journal entry that "damages to utility property consists of actual cost of expenses together with present day costs of replacing damaged or destroyed equipment, less accrued depreciation," citing to *Ohio Power Co. v. Huff*, 12 Ohio Misc. 214, 223 (M.C.1967). Mr. Royer also cites to *Huff* and several Ohio cases as holding that the measure of damages for negligent destruction of a utility pole includes the cost of repair, but also accounts for depreciation. *See Toledo Edison Co. v. Teply*, 6th Dist. Erie No. E-02-022, 2003-Ohio-1417;

*Ohio Power Co. v. Zemelka*, 19 Ohio App.2d 213, 216 (7th Dist.1969); *Ohio Edison Co. v. Cutright*, 11th Dist. Portage No. 90-P-2238, 1991 Ohio App. LEXIS 4296, *4 (Sep. 13, 1991).

**{¶13}** Ohio Edison acknowledges that neither the Ohio Supreme Court, nor this appellate district, have considered this particular issue, but urges that lower Ohio courts and courts of other states have concluded that it is improper to depreciate the public utility's cost of repair. Ohio Edison directs us to *Ohio Power Co. v. Johnston*, 18 Ohio Misc. 55 (C.P.1968). In *Johnston*, the court grappled with the difficulty of evaluating the value of a particular pole without considering the entire electrical system, determining its life expectancy with any degree of certainty, and accurately accounting for the benefit the injured party will presumably receive. Ultimately, that court held "[w]here the measure of damages is determined by cost of repair, depreciation as to the damaged property is applicable only to the extent that the repairs increase the value of plaintiff's property, and where the cost of repairs do no more than make the plaintiff whole, depreciation need not be applied. *Id.*, at 55.

**{¶14}** Ohio Edison also cites to courts outside of this state to demonstrate that other jurisdictions have reached conclusions similar to *Johnston*. Such cases include an array of considerations inherent in determining the appropriate damage award for negligent destruction of a utility pole. However, each involves a review of specific facts particular to each case, none of which are relevant to our review. *See, e.g. Zemelka*, 19 Ohio App.2d at 215, (acknowledging "[o]ther courts hold that there is not a discernible life expectancy of an individual pole; that a court can not say with reasonable assurance that the installation of a new pole did more than remedy the wrong done, and, therefore, that it is impractical to attempt to apply a measure of damages based on the difference in value before and after the accident."), citing *Johnston*, *supra*; *New Jersey Power & Light Co.* v. *Mabee*, 41 N. J. 439 (1964); *Carolina Power & Light Co.* v.

*Paul*, 261 N.C. 710 (1964); *Southwestern Electric Power Co.* v. *Canal Ins. Co.*, 121 So. 2d 769 (La. App. 1960).

{¶15} Next, Ohio Edison directs us to consider its claim in light of *Akron Barberton Cluster Ry. Co. v. Brown*, wherein this Court stated in dicta:

> Regarding the proper measure of damages, appellant argues that railroad signal boxes are analogous to utility poles. In the utility pole cases, the courts held that the appropriate measure of damages for the negligent destruction of a utility pole is the cost of the pole and facilities attached to it, minus depreciation of the damaged pole and facilities attached.

(Internal citations omitted.) *Akron Barberton Cluster Ry. Co. v. Brown*, 9th Dist. Summit No. 23483, 2007-Ohio-4804, ¶ 12. In that case, we distinguished that the scope of the negligent destruction of that signal box rendered a uniquely configured railroad crossing inoperable, as opposed to the mere destruction of a signal box or a single utility pole. Reviewing the weight of the evidence, we determined that the injured party was entitled to damages in the full amount of repair costs because, based on the facts of that case, that was the amount necessary to make the party whole.

{¶16} Ohio Edison has asked this Court to determine this issue purely as a question of law. It seeks a rule that precludes the application of depreciation to a utility's repair costs or, alternatively, places a limit on the portion of costs that may be depreciated. The cases cited by the parties in support of their respective positions share a common focus on whether the evidence presented to the court supported the award of damages. Applying the proper measure of damages in a case of this nature turns on the unique facts and circumstances of the case, and may depend upon the evidence and expert testimony presented in a case.

{¶17} Upon due consideration, this Court deems it impractical to attempt to apply a one-size-fits-all rule regarding the applicability of depreciation to the cost of repair for the negligent

destruction of a utility pole, particularly in a case such as this, where the parties stipulated to many facts and the trial court's factual findings are unchallenged. Although we agree that depreciation will not be appropriate in many circumstances, we conclude that Ohio Edison has neither alleged nor demonstrated error in the findings of fact, and we find no error of law apparent in the court's judgment. Accordingly, we cannot conclude that the trial court erred as a matter of law by applying depreciation in this instance.

B. Limited Application of Depreciation

{¶18} We are left to address Ohio Edison's alternative argument that depreciation applies only to the cost of the materials, i.e. the pole and equipment. Ohio Edison cites several cases for the proposition that courts must apply depreciation only to the costs of the pole or equipment. Ohio Edison has not identified, and we are otherwise unaware, of any Ohio case that explicitly addressed the issue of the portion of direct damages to which depreciation may apply. Nevertheless, in its judgment entry the trial court purported to employ the reasoning of *Toledo Edison v. Teply*, which held that "the appropriate 'measure of damages for the negligent destruction of a utility pole is the cost of the pole and the facilities attached thereto based on reproduction cost less accrued depreciation of the damaged pole and the facilities attached thereto.'" *Teply*, 2003-Ohio-1417 at ¶ 34, quoting *Zemelka*, 19 Ohio App.2d at 216.

{¶19} The trial court reduced the amount of direct costs Ohio Edison could recover from $3,349.49 to $1,721.64. To achieve this figure, the court considered the testimony presented by Mr. Royer's accounting expert, Keith Hock. The court found that "[a]cording to [Mr. Hock], the cost to replace the utility pole can be allocated between the period the pole was replaced and its life expectancy." The parties stipulated that the damaged utility pole was placed in service in 1981 (making it approximately 34 years old at the time of the accident), and that the average

useful life of both a previously installed pole and a replacement pole was 60 to 80 years. The court found that Mr. Hock "testified that a straight line depreciation method is a reasonable method to calculate [the] cost [of repair]" at the depreciation rate of .486. The court accepted this formula and applied the depreciation rate to the entire direct cost of repair, rather than limiting it to the cost of the pole and facilities attached thereto.

{¶20} The judgment entry reflects that the trial court determined that the rate of depreciation in this matter should apply to all of the direct damages based upon the court's interpretation of the evidence. However, it is apparent that the court's conclusion on this issue is not consistent with its own statement of the law. The trial court relied on *Teply* in its analysis, but then proceeded to apply depreciation to all direct damages, rather than allowing for depreciation of "the damaged pole and the facilities attached thereto." *Id.*

{¶21} We conclude that the trial court's award of direct damages is irreconcilable with the trial court's own correct statement of the law, as the court failed to correctly apply the law to the facts of this case. The trial court erred when it allowed for depreciation of all of Ohio Edison's direct repair costs, rather than limiting depreciation to those costs which it recognized as depreciable under Ohio Law. Therefore, this matter is remanded to trial court to make a determination regarding direct damages that is supported by the law.

{¶22} Ohio Edison's first assignment of error is overruled in part and sustained in part.

### Assignment of Error II

**The trial court erred when it held that indirect costs for a damaged utility pole must be calculated based on costs specifically attributable to utility pole replacement.**

{¶23} Ohio Edison presents its second assignment of error as a question of law: whether the trial court correctly applied the law to the facts of the case. Ohio Edison maintains that it

complied with sound accounting principles mandated by the Federal Energy Regulatory Commission ("FERC") and the Public Utilities Commission of Ohio ("PUCO"), and argues that the trial court's holding was in error and contrary to law, because of the "extreme and unfounded limitation" the court imposed on Ohio Edison to demonstrate indirect costs.

{¶24} We consider whether the trial court correctly applied the law to the facts of the case as a question of law, which we review de novo. *See Copley Twp.*, 2015-Ohio-1121 at ¶ 16. We refrain from disturbing the factual findings of the trial court's judgment unless those findings are against the manifest weight of the evidence. *Id*. An appellate court will not substitute its judgment for that of the trial court, or disturb the judgment so long as the factual findings are supported by competent, credible evidence. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). An appellate court is "guided by a presumption that the findings of the trier-of-fact were indeed correct." *Id*.

{¶25} In its judgment entry the trial court found that Ohio Edison claimed indirect costs for repair in the amount of $763.27, as stipulated by the parties. The court acknowledged that Ohio Edison classified these indirect costs as administrative and general, or "A&G", expenses. Although the parties agree in principle that indirect costs are recoverable as an element of damages, the issue posed to the trial court involved whether Ohio Edison could meet its burden of proof as to the amount of indirect costs it claimed due. The trial court determined that it did not, and declined to award the indirect costs as damages.

{¶26} Ohio Edison argues that the trial court committed error "in holding that indirect costs must be demonstrated based exclusively on costs of 'utility pole replacement as a result of third party negligence' in order to be recoverable in a utility pole damage action." However, the trial court actually concluded that:

> [b]ecause the annual study from which Ohio Edison calculated the A&G percentage to apply for its indirect costs takes into consideration other construction projects, and not just utility pole repairs, [Ohio Edison] failed to meet its burden to prove indirect damages with reasonable certainty.

The trial court focused its concern on the study from which the A&G expenses were derived, which accounted generally for construction projects—including pole replacement—in defining a source pool of expenses. The court determined this source pool did not relate with reasonable certainty to the repair of a utility pole. Accordingly, the judgment entry does not support Ohio Edison's claim that the trial court misinterpreted the law to require that Ohio Edison present indirect costs based on a source pool limited only to the replacement of utility poles destroyed as the result of third-party negligence.

{¶27} Ohio Edison further argues that the trial court did not find "that Ohio Edison failed to demonstrate that its indirect costs were correctly assessed in accordance with sound accounting principles or proven with reasonable certainty, *except* that the survey of general costs relied upon by Ohio Edison" took into account other construction projects, aside from utility poles. According to Ohio Edison, this demonstrates the trial court's extremely narrow application of the law, which would essentially require it to demonstrate the exact nexus between the repair and its overhead expenditures without regard to the financial practicality.

{¶28} This Court has previously held that "both direct and indirect costs may be awarded to a utility company when the accuracy of the costs is reasonably established and the indirect costs are calculated in accordance with the accounting principles mandated by FERC and PUCO." *State Edison Co. v. Roman*, 9th Dist. Lorain No. 97CA006735, 1998 Ohio App. LEXIS 4320, *4-5 (Sept. 16, 1998). This is because "utility companies may not be able to pinpoint all expenses to precise, out-of-pocket expenditures made necessary by a defendant's negligence," but such "costs may nevertheless be attributable to the negligent act." *Id*. at *5. "To

require a utility company to demonstrate the exact nexus between the negligent act and such expenditures is financially impracticable and would act to deprive plaintiffs of damages necessary to 'make whole' their loss." *Id.*

{¶29} In the judgment entry, the trial court discussed the testimony of employees testifying on behalf of Ohio Edison: Eric Hermann, an accountant for First Energy, and Steven Bell, an Ohio Edison lineman. The court considered Hermann's testimony regarding the study Ohio Edison uses to calculate the A&G percentage and determine its direct costs, which, in this case, is a percentage of 12.6 based on employees associated with construction and a source pool of costs that support construction within the organization. The court relied on Hermann's admission that the scope of construction was not limited to utility pole replacement, but more broadly reflects all of the company's capital improvements. Further, as Mr. Royer asserts, Mr. Hermann conceded during his testimony at trial that it would be possible to determine indirect cost applicable to pole replacement, but that it was cheaper for Ohio Edison to allocate through this method. The judgment entry also considered Bell's testimony that his construction responsibilities for Ohio Edison go beyond replacing utility poles.

{¶30} In reaching its decision, the trial court also considered the testimony of Mr. Royer's expert. Mr. Hock testified regarding the inconsistency inherent in applying a general A&G percentage for construction, which includes indirect expenses for individuals who perform duties unrelated to the replacement of utilities poles. The court relied on Mr. Hock's testimony that the indirect costs Ohio Edison presented do not bear a reasonable relationship to the work performed as a result of Royer's negligence.

{¶31} The trial court recognized that indirect costs are recoverable where they are established with reasonable certainty and calculated based on sound accounting principles, and

then concluded that Ohio Edison's indirect costs calculations were derived from a study that did not reasonably establish the accuracy of the cost of repairing a pole. *See, e.g., Toledo Edison Co. v. Czajka*, 6th Dist. Lucas No. L-02-1393, 2003-Ohio-3684, ¶ 7 (affirming a trial court's judgment finding that a utility company failed to prove its indirect damages with reasonable certainty when a "witness testified that the annual study from which the indirect costs were calculated takes into consideration other construction projects, not just pole repairs."). The fact that Ohio Edison demonstrated its compliance with sound accounting principles is not at issue. Still, Ohio Edison maintains that by demonstrating its adherence with mandated and generally accepted accounting principles the utility also met its burden to prove the accuracy of indirect costs with reasonable certainty. However, simply proving that its indirect costs were calculated in compliance with FERC and PUCO regulations does not, in itself, satisfy Ohio Edison's burden of proof.

{¶32} The trial court's application of the law does not conflict with our holding in *Roman*, allowing for indirect costs to be awarded if the accuracy of the costs is reasonably established *and* if the "costs are calculated in accordance with the accounting principles mandated by FERC and PUCO." *See Roman*, 1998 Ohio App. LEXIS at *4. The trial court held that, in addition to demonstrating accuracy in the accounting, Ohio Edison needed to prove the accuracy of indirect costs with reasonable certainty and failed to do so. *See Bell Tele. Co. v. Vaughn Bldg. Co.*, 10th Dist. Franklin No. 83AP-1093, 1984 Ohio App. LEXIS 11645, *13 (Nov. 20, 1984); *Warren Tel. Co. v. Hakala*, 105 Ohio App. 459, 460 (11th Dist.1957). We conclude, therefore, that the trial court did not err in its application of law when it considered the evidence and expert testimony presented, determined that Ohio Edison has failed to prove that

the indirect costs they requested were reasonably established relative to the repair at issue, and declined to award Ohio Edison damages for indirect costs.

{¶33} Finally, Ohio Edison also asserts that "even a 'manifest weight of the evidence' standard would require that the [t]rial [c]ourt's decision be overturned." However, Ohio Edison has not acknowledged that, in addition to utilizing generally accepted accounting principles, the evidence must also show that accuracy of the costs was reasonably established relative to the damages at issue. Consequently, Ohio Edison failed to demonstrate a lack of competent, credible evidence to support the trial court's findings, and has not developed this manifest weight argument. This Court will not develop an argument on its behalf. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998); *see also* App.R.16(A)(7).

{¶34} Accordingly, Ohio Edison's second assignment of error is overruled.

III.

{¶35} Ohio Edison's first assignment of error is overruled in part and sustained in part, and the second assignment of error is overruled. The judgment of the Akron Municipal Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

STEPHEN J. PRUNESKI and BRANDON T. PAULEY, Attorneys at Law, for Appellant.

DENISE M. HASBROOK and EMILY CIECKA WILCHECK, Attorneys at Law, for Appellant.

MITCHELL M. TALLAN and LORI E. THOMSON, Attorneys at Law, for Appellee.