[Cite as *Illum Co. v. Wiser*, 2018-Ohio-2248.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| ILLUMINATING COMPANY, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2017-A-0082** <br> **2017-A-0083** <br> **2017-A-0084** |
| JAMES J. WISER, et al., | : | |
| Defendants-Appellants. | : | |

Civil Appeals from the Ashtabula County Court of Common Pleas, Case Nos. 2016 CV 00366, 2016 CV 00367 and 2016 CV 0368.

Judgment: Affirmed.

*Amanda R. Yurechko,* Weltman, Weinberg & Reis Co., L.P.A., 323 West Lakeside Avenue, Suite 200, Cleveland, OH 44113 (For Plaintiff-Appellee).

*Mitchell M. Tallan* and *Lori Elaine Thomson,* Gallagher Gams Pryor Tallan & Littrell, 471 East Broad Street, 19th Floor, Columbus, OH 43215 (For Defendants-Appellants).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, James J. Wiser, et al., appeal the summary judgment entered by the Ashtabula County Court of Common Pleas in favor of appellee, the Illuminating Company ("CEI"), and against appellants on CEI's complaint for negligence. At issue is whether the trial court erred in its determination of CEI's damages. For the reasons that follow, we affirm.

**{¶2}** Between November and December 2014, appellants, James J. Wiser, Tyler Riddle, and Richard Diedrich, were involved in three unrelated, single-car accidents in which each appellant drove his vehicle into a CEI utility pole, destroying the pole and causing loss of electrical service to CEI customers.

**{¶3}** In May 2016, CEI filed three separate complaints, each alleging negligence against one of the appellants. In each complaint, the utility alleged the appellant was liable for the costs incurred in replacing the pole. Appellants filed their answers, denying the material allegations of the complaints.

**{¶4}** Appellants did not dispute their liability and, in March 2017, the cases were consolidated on the issue of CEI's damages. Each appellant was represented by the same insurance defense counsel as each appellant was covered by a policy of automobile insurance issued by the same insurer.

**{¶5}** On April 17, 2017, CEI filed a motion for summary judgment against appellants, supported by the affidavit of the utility's accountant, Tim Wojtowicz; CEI's records demonstrating the amount of damages caused by each appellant; the affidavit of CEI's records custodian, authenticating the foregoing records; and the affidavits of the three supervisors responsible for work performed at each collision site.

**{¶6}** Appellants filed a brief in opposition and a cross-motion for summary judgment, supported by the affidavit of Keith Hock, appellants' retained accountant.

**{¶7}** CEI argued that it was entitled to the full amount of the damages caused by appellants' negligence and that none of this amount was subject to depreciation. Alternatively, CEI argued that if the trial court were to find that any depreciation applies as a credit to appellants, that depreciation should apply only to the cost of the damaged

2

poles and the facilities attached thereto, not to the total amount of the utility's damages. CEI also argued it was entitled to recover its indirect damages, i.e., overhead.

{¶8} In contrast, appellants argued that depreciation should apply to CEI's full replacement cost, not just to the cost of the damaged poles and attached facilities. Appellants also argued that CEI was not entitled to recover its indirect damages because it failed to prove such damages with reasonable certainty.

{¶9} After considering the parties' competing briefs, the trial court entered summary judgment in favor of CEI, finding that the correct measure of damages is the cost to repair the three utility poles and the facilities attached thereto, less any accrued depreciation of the damaged poles and facilities. The court also found that depreciation does not apply to any other costs that the utility was entitled to recover.

{¶10} Further, with respect to indirect damages, the trial court found that CEI met its burden on summary judgment to demonstrate the absence of a genuine issue as to whether it correctly calculated its indirect damages to a reasonable degree of certainty. Further, the court found that appellants failed to meet their reciprocal burden to set forth specific facts demonstrating that a genuine issue of fact remained for trial on this issue. The court entered judgment in favor of CEI and against Appellant Wisner in the amount of $5,689; against Appellant Riddle in the amount of $20,532; and against Appellant Diedrich in the amount of $15,071.

{¶11} Appellants appeal the trial court's judgment, asserting the following for their sole assignment of error:

{¶12} "The trial court erred when it granted summary judgment to Appellee and held that depreciation applied only to the cost of Appellee's utility pole and that Appellee

3

had proven its indirect costs with reasonable certainty when there existed competing reasonable inferences from the facts and conflicting expert affidavits which created a genuine issue of material fact, rendering summary judgment improper."

{¶13} As a preliminary matter, we note the trial court's judgment states that CEI is to prepare a proposed final judgment entry consistent with the court's ruling and provide it to the court. This apparently was not done; however, since the court signed and filed its judgment; that entry contains all findings necessary for a final order; and the parties do not challenge the entry on this ground, we deem the language about a future entry to be surplusage and disregard it.

{¶14} A trial court's decision to grant a motion for summary judgment is reviewed by an appellate court under a de novo standard of review. *Duncan v. Hallrich, Inc.*, 11th Dist. Geauga No. 2006-G-2703, 2007-Ohio-3021, ¶10.

{¶15} Pursuant to Civ.R. 56(C), summary judgment is proper if (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶16} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of genuine issues of material fact as to the essential elements of the nonmoving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in

4

support of his motion. *Dresher, supra.* These evidentiary materials must show that there is no genuine issue as to any material fact. *Id.* If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. *Id.* However, if this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. *Id.*

{¶17} "The purpose of a damage award is to make the injured party whole." *Illuminating Co. v. Burns*, 8th Dist. Cuyahoga No. 100235, 2014-Ohio-502, ¶6, citing *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 184 (1975). "An injured party 'should be neither undercompensated nor overcompensated,' and bears the burden of proving the pecuniary value of the injury." *Ohio Edison Co. v. Royer*, 9th Dist. Summit No. 28468, 2018-Ohio-75, ¶11, quoting *Howard, supra.* It is undisputed that the utility poles in question have no real market value. "When property has no real market value, 'damages [can] be awarded based on the reasonable cost of restoration, with consideration of the condition of the property prior to the damage.'" *Royer, supra*, quoting *Martin v. Design Constr. Servs.*, 121 Ohio St.3d 66, 2009-Ohio-1, ¶21.

{¶18} **I. DEPRECIATION APPLIES ONLY TO CEI'S MATERIAL COSTS.**

{¶19} The parties essentially repeat their arguments below. They agree the appropriate measure of damages is the cost of repair. They disagree, however, on what measure of damages will make CEI whole without overcompensating it. CEI argues that in order to be made whole, it is entitled to recover the entire cost of repair without any depreciation. This is because the poles can last indefinitely if they are not damaged and there is no added benefit to the utility to replace any pole early, although they have a life expectancy of 80 years for accounting purposes. CEI argues that replacement of the

5

poles merely allowed it to continue providing electricity to its customers, making it whole again, without providing it with any additional benefit.

{¶20} Conversely, appellants argue that a proper damage award must apply depreciation to all of CEI's repair costs. They argue the utility lost aging poles and that it would be overcompensated by new poles providing additional years of anticipated service. Appellants argue the trial court should have compensated CEI for the value of the remaining years of useful life that it expected from the damaged poles, and depreciated the repair costs to account for the additional years of service CEI will receive from the new poles.

{¶21} Contrary to appellant's argument, this court has previously ruled on how depreciation is to be applied in determining a utility's damages. In *Ohio Edison Co. v. Cutright*, 11th Dist. Portage No. 90-P-2238, 1991 WL 179589 (Sep. 13, 1991), this court held: "'The measure of damages for the negligent destruction of a utility pole is the cost of the pole and the facilities attached thereto based on *reproduction cost less accrued depreciation of the damaged pole and the facilities attached thereto.*'" (Emphasis added.) *Id.* at *2, quoting *Ohio Power Co. v. Zemelka*, 19 Ohio App.2d 213 (7th Dist.1969), syllabus. Thus, this court in *Cutright* limited depreciation to the cost of the damaged pole and its attached facilities.

{¶22} The Sixth District applied this court's holding in *Cutright, supra*, in *Toledo Edison v. Teply*, 6th Dist. Erie No. E-02-022, 2003-Ohio-1417, ¶34.

{¶23} Similarly, this court, in *Ohio Edison Co. v. Ford*, 11th Dist. Portage No. 92-P-0052, 1993 WL 199256 (May 21, 1993), held: "When it has been found that the defendant had negligently hit a utility pole, the 'measure of damages is the *reasonable*

6

*cost of repairs, limited only to the extent that such amount does no more than make the plaintiff whole. \* \* \*.'"* (Emphasis added.) *Id.* at \*3, quoting *Cincinnati Bell, Inc. v. Hinterlong*, 70 Ohio Misc. 38, 44 (Hamilton County M.C.1981).

**{¶24}** In 2018, the Ninth District, in *Royer, supra*, applied the same standard this court applied in *Cutright, supra*. *Royer* at ¶18. In *Royer*, after determining that depreciation applies only to the cost of the pole and its facilities, the Ninth District held: "[t]he trial court erred when it allowed for depreciation of all of Ohio Edison's direct repair costs, rather than limiting depreciation to those costs which it recognized as depreciable under Ohio Law," i.e., the cost of the damaged pole and the facilities attached thereto. *Id.* at ¶21.

**{¶25}** Curiously, while CEI asks us to affirm the trial court's judgment, which allowed depreciation for the poles and attached facilities, it also asks us to adopt the "majority rule" in the United States, namely, that a utility is permitted to recover the full cost of pole-replacement, without any depreciation. *See e.g.*, *Kansas Power & Light v. Thatcher*, 14 Kan. App.2d 613, 619-620 (1990). However, since CEI did not file a cross appeal, it waived its right to seek a change in the trial court's judgment to deny appellants any depreciation. App.R.3(C)(1).

**{¶26}** CEI argues that no court which has applied depreciation to utility equipment has depreciated the entire amount of the utility's repair costs, and appellants do not cite any case law holding that depreciation applies to the entire cost of pole repair. Moreover, while appellants cite *Royer, supra*, they fail to acknowledge that the Ninth District in that case rejected their argument that depreciation applies to all of CEI's costs to replace the poles and facilities. *Id.* at ¶21.

7

{¶27} Contrary to appellants' argument, the determination of whether depreciation applies to the utility's full replacement costs or just the cost of the pole is a question of law that we review de novo, not a question of fact to be resolved from a determination of the credibility of competing experts. *Royer, supra,* at ¶7. The opinion of appellants' expert that depreciation should be applied to all of the utility's repair costs in determining its damages is a legal conclusion and, as such, cannot be considered on summary judgment. *Warren v. Libbey*, 6th Dist. Lucas No. L-09-1040, 2009-Ohio-6686, ¶15-16.

{¶28} The rule adopted by this court in *Cutright, supra*, and subsequently adopted by the Sixth District in *Teply* and the Ninth District in *Royer*, provides a fair and equitable balance by allowing the utility to recover its repair costs, but limiting that recovery by allowing depreciation of the materials actually damaged. We therefore hold that the trial court did not err in finding that appellants were entitled to depreciation, but that this depreciation was limited to the cost of the damaged poles and their attached facilities and does not apply to any other costs CEI is entitled to recover.

{¶29} **II. CEI DEMONSTRATED THE ABSENCE OF A GENUINE ISSUE AS TO WHETHER IT WAS ENTITLED TO ITS INDIRECT DAMAGES AND APPELLANTS FAILED TO DEMONSTRATE AN ISSUE FOR TRIAL.**

{¶30} "Damages include both direct and indirect costs. Direct costs are the expenses incurred as a result of the actual project and include materials, labor, mileage, and equipment costs." *Burns, supra*, citing *Ohio Edison Co. v. Peebles*, 7th Dist. Mahoning No. 93 C.A. 92, 1994 WL 424085 (Aug. 1, 1994). "Indirect costs are the expenses involved in running a business and are not attributable to any one project." *Burns, supra*, citing *Complete Gen. Constr. Co. v. Ohio Dept. of Transp.,* 94 Ohio St.3d

8

54, 57, 2002-Ohio-59. "Indirect costs may include salaries of executive or administrative personnel, general insurance, rent, utilities, telephone, * * * professional fees, legal and accounting expenses, advertising, and interest on loans." *Id.* "Indirect costs of repairs 'are a proper element of damage for which recovery may be had, where such costs can be proved with reasonable certainty and have been correctly made in accordance with sound accounting principles.'" *Burns, supra*, quoting *Warren Tel. Co. v. Hakala*, 105 Ohio App. 459, 460 (11th Dist.1957), syllabus; *accord Ohio Edison Co. v. Beavers*, 11th Dist. Trumbull No. 96-T-5568, 1997 WL 401541, *3 (Jun. 27, 1997).

**{¶31}** Appellants concede that CEI would generally be entitled to recover its indirect damages; however, they argue the trial court erred in awarding CEI its indirect damages because it did not prove them with reasonable certainty. In support, appellants rely on *Toledo Edison Co. v. Czajka*, 6th Dist. Lucas No. L-02-1393, 2003-Ohio-3684, and the affidavit of Keith Hock, their accountant. In *Czajka*, the Sixth District held the evidence was insufficient to prove indirect damages with reasonable certainty because the annual study from which the indirect costs were calculated took into consideration other construction projects, not just pole repairs. *Id.* at ¶7. Mr. Hock's affidavit echoed the Sixth District's holding and reasoning in *Czajka*.

**{¶32}** However, in *Burns, supra*, the Eighth District held that evidence virtually identical to the evidence presented here regarding the utility's direct and indirect damages was sufficient to prove indirect costs to a reasonable degree of certainty. *Id.* at ¶12-13.

**{¶33}** Here, CEI submitted the affidavit of its records custodian, who authenticated CEI's business records regarding its claims against appellants. As to each collision, CEI presented a Claim Invoice, which set forth the cost of materials, labor, and equipment

9

caused by the appellant's negligence. A Claims Work Summary was also presented as to each incident, which specified the dates and hours of each CEI employee who worked on the repairs; the dates and times vehicles were used on the job; and the materials used and their cost. CEI also presented a Damage Cost Breakdown as to each incident, setting forth the direct costs for labor, equipment, and materials, and the utility's calculation of indirect costs for each job.

{¶34} The three supervisors who oversaw work on the repairs at each accident site also submitted affidavits in which they substantiated the repair costs listed in CEI's Claim Invoices. The supervisors testified about the repairs that were performed and explained that the Claims Work Summary accurately reflected the materials used, the hours employees worked, and the hours vehicles were used on the job.

{¶35} Further, Tim Wojtowicz, an accountant employed by CEI, verified that the Claim Invoice for each accident accurately reflected the costs incurred by the utility as a result of each collision. He also testified the Damage Cost Breakdown for each incident accurately reflected the costs determined by CEI for each project.

{¶36} Mr. Wojtowicz said the cost of labor as shown on the foregoing documents is determined by union and other contracts based on the job classification, known as the "activity price," and is entered in CEI's accounting system. The cost of benefits provided to the employee for that job classification is added to the hourly wage paid the employee to reflect the true cost per hour of the employee performing that job.

{¶37} Mr. Wojtowicz said the cost of the materials listed on the invoices reflects the actual cost of the item "coming out of the warehouse."

{¶38} As to indirect damages, Mr. Wojtowicz testified the "accounting and general expense," commonly known as overheads or indirect expenses, is determined by a study measuring the cost of doing business, or the cost of maintaining employees who perform work to support the construction projects, but whose time is not directly chargeable or tracked for each project. The overhead rate reflects support services provided by the human resources, information technology, accounting and legal support groups.

{¶39} Mr. Wojtowicz testified that accounting and general overheads are applied to the cost of each construction job. Construction jobs include responding to and repairing damaged equipment, whether or not the cost of the construction job can be recovered from a third party, such as appellants here. He said CEI builds no profit into the cost of these jobs, but strives to accurately reflect the true cost of a construction job.

{¶40} Mr. Wojtowicz said that all studies used to determine costs are performed according to generally accepted accounting principles as mandated by the Public Utilities Commission of Ohio and the Federal Energy Regulatory Commission. He said that CEI updates the studies annually and reviews them quarterly. The studies are audited internally and externally to ensure their accuracy.

{¶41} To calculate CEI's overhead, the utility takes the total cost of its support groups attributable to all construction projects and divides it by the total cost of all construction work. The resulting percentage ("the overhead multiplier"), which in this case was 11.33 percent, is multiplied by the direct costs for a specific project in determining the overhead costs for that project. That amount is then added to the cost of the project. This percentage represents the cost of "support functions," which, as noted, include human resources, information technology, accounting and legal services. The accounting

11

management department determines what cost for these support functions should be added to the cost of doing business, i.e., overhead costs.

{¶42} As noted above, the appellate court in *Burns, supra*, held that evidence virtually identical to the foregoing was sufficient to demonstrate that CEI's direct and indirect costs were determined to a reasonable degree of certainty. *Id.* at ¶13.

{¶43} In support of its opposition to summary judgment, appellants presented the affidavit of their accountant, Keith Hock. In his affidavit, Mr. Hock admitted that CEI's approach in determining its overhead multiplier is "an appropriate approach for [CEI] to take in the ordinary course of its business and in its general accounting for its construction related costs." However, Mr. Hock said it was not an appropriate approach in this case because he lacks sufficient information to tell if there was a causal connection between the collisions and the utility's indirect damages. This is because, according to him, CEI did not (1) identify what support groups were included in the overhead costs for construction projects in general; (2) identify which support groups are required for pole-replacement work; and (3) confirm there is no difference between the support groups needed for pole-replacement and those needed for other construction projects.

{¶44} However, as noted above, Mr. Wojtowicz listed the specific groups that perform work to support the construction projects and explained that, based on CEI's business model, pole repair jobs cannot be separated from other types of construction services. The employees performing pole replacement are part of the construction services department. He said no employees are dedicated just to pole repair, as opposed to other construction jobs. There is no separate training provided by CEI for pole repairs as opposed to other construction services. The applicable amount of time from the

12

various departments used to support construction services cannot be apportioned to just pole repairs as opposed to other construction projects. For example, the human resources and information technology support for all construction services is the same, *whether the construction crew is performing pole replacement or another construction job.*

{¶45} Appellants' attempt to challenge Mr. Wojtowicz by referring to an alleged inconsistency between his testimony and the testimony of another CEI employee, who testified *in an unrelated case two years earlier in the Akron Municipal Court*, is unavailing. That witness was unable to answer the question regarding what part of the overhead for construction jobs was related to the pole-repair job in that case, but said he could possibly do this by researching the issue. That witness' conjectural comment was not inconsistent with Mr. Wojtowicz' unequivocal testimony that the support provided by the various support groups for pole replacement and other construction jobs is the same.

{¶46} As a result, CEI met its burden to demonstrate that it was entitled to recover its indirect damages, and appellants had the reciprocal burden to point to specific evidence which showed an issue of fact. However, appellants failed to meet this burden. For example, they failed to present any evidence: (1) that there is a difference between the support groups needed for pole-replacement and those needed for other construction projects; (2) that there is a difference between the support provided for pole-replacement and the support provided for other construction projects; (3) that the indirect expenses for pole-repair work would be different from the indirect expenses shown by CEI; and (4) that an alternative multiplier based solely on pole-repair jobs is possible.

13

{¶47} For the reasons stated in this opinion, the assignment of error lacks merit and is overruled. It is the order and judgment of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed

TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.,

concur.